[No. 10349-8-III.   Division Three.   November 6, 1990.]

THE CITY OF SUNNYSIDE, *Respondent,* v. RUDY O.
FERNANDEZ, *Petitioner.*

*Louis V. Delorie,* for petitioner.

*Daniel B. Heid, City Attorney,* for respondent.

MUNSON, C.J.—Discretionary review was granted Rudy O. Fernandez to review his conviction for driving while intoxicated. He argues the BAC Verifier DataMaster breath test results should be suppressed because he had blood in his mouth at the time the test was administered.

On April 30, 1988, the Sunnyside Police Department received a report of a 1–car accident. When officers arrived at the accident scene, no vehicle occupants were found, but several open beer cans were lying in the overturned Ford Bronco. The officers were informed two people were being treated in the emergency room of a nearby hospital for injuries from an auto accident. Officers went to the hospital and contacted one patient, Rudy Fernandez. Mr. Fernandez

admitted he was driving the Bronco at the time of the accident. He also admitted he was at a tavern drinking shortly before the accident.

Mr. Fernandez had injuries to his mouth and leg, but he was released from the hospital and the officers took him to the Sunnyside police station. Officer Darrell Merry gave Mr. Fernandez a breath test. Before administering the test, Officer Merry used several procedures to insure Mr. Fernandez' mouth was free from foreign substances. Officer Merry (1) asked Mr. Fernandez to remove everything from his mouth, (2) checked his mouth and saw there was nothing in it except blood, and (3) asked him if there was anything in his mouth, to which Mr. Fernandez indicated there was not. The test produced readings of .15 and .16.

A citation for driving under the influence of intoxicants was issued to Mr. Fernandez. Prior to trial, he moved to suppress the breath test results. The motion was denied. The evidence was admitted, again over objection; the court found him guilty. On appeal, the Superior Court affirmed. Discretionary review was granted.

Mr. Fernandez contends his blood in his mouth is a foreign substance under WAC 448-12-230 and invalidates his breath test results. RCW 46.61.506 provides for the taking of evidence of a person's breath, blood, or other bodily substance for determination of alcoholic content and states:

> (3) Analysis of the person's blood or breath to be considered valid under the provisions of this section or RCW 46.61.502 or 46.61.504 shall have been performed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose. The state toxicologist is directed to approve satisfactory techniques or methods, to supervise the examination of individuals to ascertain their qualifications and competence to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state toxicologist.

WAC 448-12-230 sets forth the following methods and procedures approved by the state toxicologist for conducting a valid breath test:

*Administration of breath test on BAC Verifier DataMaster instrument.* Pursuant to RCW 46.61.506, the state toxicologist approves the following method for performing the breath test on the BAC Verifier DataMaster infrared breath testing instrument. To obtain a valid breath test, it must be determined (a) that the subject has had nothing to eat or drink for at least fifteen minutes prior to the administration of the test, and (b) *that the subject does not have any foreign substances, not to include dental work, fixed or removable, in his/her mouth at the beginning of the fifteen minute observation period.* Such determination shall be made by either an examination of the mouth or a denial by the subject that he/she has any foreign substances in his/her mouth. A test mouthpiece is not to be considered a foreign substance for purposes of this section.

(Italics ours.)

■ The City contends the testimony of David Predmore, forensic toxicologist supervisor with the Washington State Toxicology Laboratory, demonstrates it was not the intent of the code drafters to consider a person's own blood as a foreign substance. Courts should give weight to an agency's interpretation of a rule. *Safeco Ins. Cos. v. Meyering,* 102 Wn.2d 385, 392, 687 P.2d 195 (1984). However, the interpretations given such weight should be from expressions of the agency's legislative and regulatory power and from informal rulings of the agency or its officers. 3A N. Singer, *Statutory Construction* § 66.04, at 308–09 (4th ed. 1986). Mr. Predmore's subjective understanding of agency intent is not such an agency interpretation. This court must therefore determine the meaning of "foreign substance".

■ The term "foreign substance" is not defined in the code. When a term is undefined by the statute, it should be given its ordinary meaning. *State ex rel. Graham v. Northshore Sch. Dist. 417,* 99 Wn.2d 232, 244, 662 P.2d 38 (1983). The court frequently resorts to dictionaries to ascertain the common meaning of statutory terms. *Graham,* at 244; *Codd v. Stevens Pass, Inc.,* 45 Wn. App. 393, 399, 725 P.2d 1008 (1986), *review denied,* 107 Wn.2d 1020 (1987). According to the *Random House Dictionary* 749 (2d ed. 1987), foreign means "belonging to or proceeding from other persons or things . . . not belonging to the place or body where found

. . .". One's blood does belong to the person or body where it is found. As Mr. Predmore testified, "it's the same blood that's already being tested".

■■ "Rules of statutory construction apply to administrative rules and regulations . . .". *State v. Burke,* 92 Wn.2d 474, 478, 598 P.2d 395 (1979). When interpreting a statute, the court must give effect to the legislative intent. *Martin v. Meier,* 111 Wn.2d 471, 479, 760 P.2d 925 (1988). "The legislature's intent and purpose are to be determined from the subject matter and statutory text as a whole, interpreted in terms of the general object and purpose of the legislation." *Eastlake Comm'ty Coun. v. Roanoke Assocs., Inc.,* 82 Wn.2d 475, 490, 513 P.2d 36, 76 A.L.R.3d 360 (1973). The WAC should thus be interpreted consistently with its underlying policy. *Safeco,* at 392.

■■ The administrative regulations give specific specifications for the administration of the test, certification of the instructors and operators, as well as review of operator qualifications. WAC 448–12–240 through –260. These specifications demonstrate the toxicologist's concern to insure accuracy. The ultimate concern of the courts is for a reliable and accurate measure of the subject's alcoholic breath content. *State v. Ford,* 110 Wn.2d 827, 833, 755 P.2d 806 (1988). Thus, the term "foreign substance" should, in light of this purpose, involve substances which adversely affect the accuracy of test results. The uncontradicted testimony of Mr. Predmore indicates one's blood in one's own mouth would not have any effect on breath test results. Charles Solomon of the Washington State Patrol Crime Laboratory testified to the same effect. This testimony is uncontradicted.[1]

---

[1]It should be noted that Mr. Fernandez does not contend that any blood clogged or entered the BAC Verifier DataMaster or in any way hampered his giving a breath sample.

We hold one's own blood is not a foreign substance under WAC 448–12–230. The result of Mr. Fernandez' breath test was properly admitted.

The conviction is affirmed.

GREEN and THOMPSON, JJ., concur.