[No. 36034-5-I.   Division One.   December 18, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. VIVIAN McGINTY, *Petitioner*.

*Michael F. Morgan* of *Associated Counsel for the Accused,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Donald J. Raz, Deputy,* for respondent.

COLEMAN, J. — In this case this Court is asked to decide whether an electronics technician who works on circuit boards later used in the BAC Verifier DataMaster (Data-Master) must be certified under WAC 448-13-170. Finding that the regulation does not encompass the type of repair at issue here, we affirm.

On September 10, 1993, Vivian McGinty was arrested for driving under the influence of alcohol. Her breath registered alcohol content readings over the legal limit on Data-Master 602687.

The DataMaster is a complex machine. Each instrument is made up of hundreds of parts, including nine circuit boards.[1] Some of the circuit boards themselves contain hundreds of parts. There are three Crime Laboratory Technicians (Technicians) certified under WAC 448-13-170

---

[1] Each of the nine circuit boards regulates a different function of the DataMaster: (1) the power supply board; (2) the main CPU board with the central processor and operating program; (3) the DataMaster board holds all of the tests; (4) the modem board calls up the instrument from a computer; (5) the printer board drives the printer; (6) the detector board processes the signal from the detector; (7) the sample chamber control board monitors temperature of the sample chamber, adjusts the intensity of the infrared source, and monitors breath flow; (8) the pump driver board controls the purge pump and simulator pump; and (9) the RFI board detects radio interference.

to repair and maintain DataMaster instruments in King County. Technicians replace and install DataMaster parts, conduct quality assurance tests, and certify the accuracy of the instruments.

In King County, Technicians remove circuit boards from DataMaster instruments in the field and take them to Mark Stone for repair. Stone, who works for the Washington State Patrol as a Law Enforcement Communications Systems Technician, spends approximately 75 percent of his time repairing these circuit boards. Stone is not certified as a Technician under WAC 448-13-170, and he does not repair or service DataMasters in the field. He works on the boards in his office, where he has a DataMaster instrument to test the boards as he repairs them. The instrument in his office is never used to test the breath of anyone suspected of driving while intoxicated.

After Stone repairs a circuit board, he places it in inventory along with other boards of the same type, both new ones and those repaired by the factory under warranty. Because all boards are labeled with serial numbers corresponding to board type and not with individual identification numbers, boards received from the factory are indistinguishable from those Stone has repaired. As needed, Technicians take boards from inventory and install them in DataMaster instruments in the field. There is a one to five percent probability that a given replacement board used by a Technician came from the factory, either new or repaired under warranty. When Technicians replace a circuit board, they test it, as well as the entire instrument, to ensure that the DataMaster is functioning accurately and reliably.

The DataMaster instrument at issue in the present case was serviced by Technicians twice in the two years before the breath test was administered to McGinty. Both times, the power supply board was replaced. McGinty moved to suppress the results of her breath test on the ground that the State had allowed a noncertified technician to make

adjustments and repairs to the instrument, arguing that Technicians may have installed a board that Stone had repaired. The district court denied the motion. McGinty then stipulated to the police report, and the trial court found her guilty as charged. Her conviction was affirmed on RALJ appeal, after which this court granted discretionary review.

The sole question presented is whether the breath test regulations require a person who works on component parts of the DataMaster to be certified. WAC 448-13-170 requires the state toxicologist to certify as Technicians

> such persons found by him to be competent and qualified to maintain the proper working order of the BAC Verifier Data-Master infrared breath testing instrument, through adjustment, repair, and regular service. Further, technicians are authorized by the state toxicologist to perform the procedures approved for periodic quality assurance of the BAC Verifier DataMaster infrared breath testing instruments as required pursuant to WAC 448-13-110. . . .

The quality assurance program described in the referenced statute includes "recalibration, and checks of components and function of every BAC Verifier DataMaster instrument used for evidential breath testing purposes[.]" WAC 448-13-110.

■■■■ Rules of statutory construction, which apply equally to administrative rules and regulations, require statutes to be given a rational, sensible construction. *State v. Thomas*, 121 Wn.2d 504, 512, 851 P.2d 673 (1993); *Sunnyside v. Fernandez*, 59 Wn. App. 578, 582, 799 P.2d 753 (1990). When statutory language is clear and unambiguous, there is no need for judicial interpretation. *State v. Gettman*, 56 Wn. App. 51, 54, 782 P.2d 216 (1989). The plain language of the regulation at issue here does not require individuals to be certified as Technicians when their only connection with the DataMaster is to repair component parts that have been removed from the machine. A rational reading of the regulation reveals a

focus on the DataMaster instrument as an integral machine and not on a dissection of its composite parts. In addition, the regulation speaks clearly in terms of persons who work directly on the DataMaster. This emphasis on direct handling of the instrument itself and on the machine as a whole is further reflected in the regulation defining the quality assurance program.

Stone is not directly responsible for determining the proper working order of a given DataMaster used to measure the alcohol content of a suspect's breath. Instead, Technicians maintain proper working order, conduct quality assurance, and certify accuracy of the instrument. In fact, when a circuit board is replaced, Technicians must conduct a complete inspection to verify that the DataMaster is functioning properly, regardless of the source of the replacement part, before the machine can be approved for use in the field. WAC 448-13-050, -060, -110; *State v. Wittenbarger*, 124 Wn.2d 467, 479, 880 P.2d 517 (1994). Stone's contact with the boards cannot be characterized as maintenance of the proper working order of the DataMaster instrument.

This understanding of Stone's role in relation to that of the Technicians is supported by the statement of Dr. Barry Logan, State Toxicologist, who explained that

> [t]he title or the position of BAC Verifier DataMaster technician was created for a specific purpose and that was to [e]nsure that there was a consistent, final interaction between any new part, whether it came from Mr. Stone or from the manufacturer or from an electronic supply house, for the instrument in which that component part was to be used is to be put out into the field. Mr. Stone may well be able to certify or to testify that a given circuit board works that he tested in his office; he can't state with any certainty that it doesn't get damaged between the time it leaves his office and is shipped to a technician or that once the part that he has repaired is put in an instrument, that that instrument will work perfectly.

Dr. Logan further stated that it is Technicians who

determine whether a circuit board "works in that system as a whole."

"The ultimate concern of the judiciary is that the methods approved result in an accurate test, competently administered, so that a defendant is assured that the test results do in fact reflect a reliable and accurate measure of his or her breath content." *State v. Ford*, 110 Wn.2d 827, 833, 755 P.2d 806 (1988). In the present context, this concern is addressed by the quality assurance program and other checks carried out by Technicians, who are directly responsible for the proper functioning of DataMaster instruments used in the field. Because Stone does not work on DataMaster instruments in the field, his job is not encompassed within the plain language of WAC 448-13-170, and he is not required to be certified as a Technician. Therefore, the trial court properly denied McGinty's motion to suppress her breath test results.

The judgment of the trial court is affirmed.

KENNEDY, A.C.J., and ELLINGTON, J., concur.