IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

APRIL 1995 SESSION

FILED

August 15, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 01C01-9501-CC-00001 |
| | ) | |
| | ) | Coffee County |
| v. | ) | |
| | ) | Honorable Gerald L. Ewell, Sr., Judge |
| | ) | |
| WILLARD C. COOK, SR., | ) | (Driving Under the Influence) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Robert S. Peters
100 First Avenue, S.W.
Winchester, TN 37398

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
        and
Sharon S. Selby
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

C. Michael Layne
District Attorney General
        and
Stephen E. Weitzman
Assistant District Attorney General
307 S. Woodland
P.O. Box 147
Manchester, TN 37355

OPINION FILED:_____


AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The defendant, Willard C. Cook, Sr., was convicted by a jury in the Coffee County Circuit Court of driving while under the influence of an intoxicant. He was sentenced to eleven months, twenty-nine days in jail, to be suspended upon serving two hundred forty hours in confinement, and fined three hundred fifty dollars. In this appeal as of right, the defendant essentially contends the following:

> (1) the evidence was insufficient to convict him;
>
> (2) the trial court erred in admitting into evidence the defendant's breath test result, holding that he waived objection by not proceeding by a pretrial motion to suppress, when the proof showed that the defendant took the test with his dentures in his mouth;
>
> (3) the trial court erred in rejecting the defendant's requested jury instruction to the effect that the jury could not consider the breath test result until the jury determined that certain preliminary facts had been placed into evidence.

Although we hold that the trial court erred in deeming the defendant's objection to be waived, we affirm the judgment of the trial court.

Tennessee Highway Patrolman Don Kelsey testified that after 2:00 a.m., July 10, 1993, near Manchester, he saw a car drifting from lane to lane without signaling. He said he stopped the car as it was about to enter the wrong way on a one-way road. He said that the defendant was driving and that he noticed an alcoholic beverage smell on the defendant's breath, who also had bloodshot eyes. The defendant admitted drinking and Trooper Kelsey found a half-empty half-pint bottle in the car.

Trooper Kelsey testified that the defendant had some trouble maintaining his balance in getting out of his car. He said that he gave the defendant two field sobriety tests, the horizontal gaze nystagmus test and a walk and turn test. He stated that the defendant's eyes bounced, indicating the defendant was under the influence of

2

alcohol, and that he was unable to keep his balance in walking heel-to-toe. Trooper Kelsey arrested the defendant for DUI and took him to the jail. He added that the defendant was staggering when walking from the patrol car to the jail.

Coffee County Jailer Charley Jones testified that he gave the defendant a breath test and that the defendant registered .13. Mr. Jones explained the procedures that he followed, and the defendant replied "no" when Mr. Jones asked if there was any foreign matter in the defendant's mouth. Mr. Jones acknowledged that he was unaware that the defendant had dentures with a cotton pad base.

The defendant testified that he had been to the Last Chance Saloon with two women. He said that he consumed part of a half-pint of Lord Calbert over some four and one-half hours before they left. He said that the car was owned by one of the women, but he drove because she was sick. He said that the car weaved because one of the women was hollering. He explained that he was polite and courteous to Trooper Kelsey and that he performed three field sobriety tests. He denied being under the influence of alcohol and stated that any difficulties he had with the field test related to his physical problems.

Susan Lynn Gibson testified that she saw the defendant at the Last Chance Saloon and that he did not appear to her to be intoxicated. She said that he was with two women and that when one got sick, the defendant offered to drive the woman home. Ms. Gibson said that the defendant followed when she left the establishment.

I

The defendant contends that the evidence was insufficient to prove that he was under the influence of alcohol, primarily indicating that the breath test result was unreliable. This issue is without merit.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). When the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2791, 2782 (1979).

The defendant was seen driving in an erratic manner with the odor of alcohol on his breath. He had trouble maintaining his balance, and he could not perform properly on sobriety tests. His eyes were bloodshot, and he admitted that he drank alcohol prior to his arrest. Trooper Kelsey's testimony reflects that he was of the opinion that the defendant was under the influence. His testimony, alone, supports the jury verdict. Obviously, the breath test result was additional evidence of the defendant's intoxication.

We note that the defendant made clear to the jury that he had dentures when he took the breath test, that his dentures contained a cotton pad, and that this could have affected the test result. Further, the defendant testified to his physical conditions which he claimed affected his performance on the sobriety tests. He also explained to the jury that his car weaved because of one of the girls' actions. Obviously, the jury was not convinced by his evidence. In this respect, the weight and credibility of the witness' testimony are matters entrusted exclusively to the jury as the

4

trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). The evidence was sufficient to convict the defendant.

## II

Next, the defendant contends that the trial court erred in admitting the breath test result into evidence. First, he complains about the trial court's finding that his objection to the result was waived. Second, he asserts that his dentures constituted foreign matter in his mouth that would bar the admission of the test result as unreliable under State v. Sensing, 843 S.W.2d 412 (Tenn. 1992). We agree with the defendant's first complaint, but not the second, given the circumstances of this case.

When the state called Charley Jones as a witness about the breath test, the defendant requested a jury-out hearing for the purpose of contesting the admissibility of the test result because the test was taken with the defendant having dentures. The defendant based his objection upon Sensing, in which our supreme court addressed the foundation requirements[1] that a party must establish to admit breath test results obtained from an Intoximeter 3000 instrument, the one used in this case. One of the requirements is that the testing officer must be able to testify that the test subject was observed for twenty minutes before the test, and that during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke or regurgitate. 843 S.W.2d at 416.

---

[1]In State v. Bobo, 909 S.W.2d 788, 790 (Tenn. 1995), our supreme court stated the Sensing requirements as follows:

> First, the testing operator must testify that the test used followed Tennessee Bureau of Investigation standards. Second, the operator must be certified in accordance with those standards. Third, the machine must be certified, tested regularly for accuracy, and working properly. Fourth, the motorist must be personally observed for the requisite minutes before taking the test. Fifth, the operator must follow the instrument's prescribed operational procedure. Lastly, the operator must identify the test results offered in evidence.

At the evidentiary hearing, the fact that the defendant had dentures was first disclosed. Mr. Jones testified that Trooper Kelsey, then he, observed the defendant and that the defendant had not been sick, had anything to drink, or anything else. He testified that upon being questioned, the defendant denied having any foreign matter in his mouth. Mr. Jones acknowledged that he was unaware of the defendant having dentures with a cotton pad, but that if he had known, he would have had the defendant remove them. The trial court ruled that the defendant was required to have filed a pretrial motion to suppress on the issue. Also, it noted its belief that the defendant's claim went to the weight of the evidence, not its admissibility.

## A

The defendant contends that he was not obligated to file a pretrial motion to suppress to raise the issue of the test result being inadmissible because the state failed to follow the Sensing requirements. He asserts that he did nothing more than to contest the admissibility of evidence as would any midtrial objection. In response, the state notes that the defendant was moving to exclude the test result. It relies upon Rule 12(b)(3) and (f), Tenn. R. Crim. P., which require that a motion to suppress evidence must be filed before trial and that a failure to file a motion timely constitutes a waiver.

> The purpose of this rule is not only to avoid the unnecessary interruption and inefficiency in conducting jury trials caused by needlessly removing the jury from the courtroom for protracted suppression hearings, but also to ensure the right of the state to an appeal of an adverse ruling by the trial judge without placing the defendant twice in jeopardy.

State v. Randolph, 692 S.W.2d 37, 40 (Tenn. Crim. App. 1985).

In support of the state's position, we note that this court has previously indicated that a defendant's failure to file a motion to suppress timely relative to an attempt to exclude a blood-alcohol test constitutes a waiver. See, e.g., State v. Braden, 874 S.W.2d 624, 625 (Tenn. Crim. App. 1993). However, upon further consideration,

6

we believe that Rule 12(b)(3), Tenn. R. Crim. P., regarding motions to suppress evidence was not meant to apply to an issue relating to whether a sufficient foundation has been laid for the admission of scientific test results into evidence.

The Advisory Commission Comments to Rule 12 state that our rule conforms to its federal counterpart. Given this, we note that in <u>United States v. Barletta</u>, 644 F.2d 50, 54 (1st Cir. 1981), the First Circuit stated the following:

> At least as used in 12(b), "suppress" has a rather definite and limited meaning, as explained by the Advisory Committee notes accompanying the Rule. Motions to suppress are described as "objections to evidence on the ground that it was illegally obtained," including "evidence obtained as a result of an illegal search" and "other forms of illegality such as the use of unconstitutional means to obtain a confession." Advisory Committee notes, Federal Rule Criminal Procedure 12(b)(3), foll. 18 U.S.C.A., <u>citing</u> 3 C. Wright, Federal Practice & Procedure: Criminal § 673 (1960). Put generally, then, suppression motions concern the "application of the exclusionary rule of evidence," or matters of "'police conduct not immediately relevant to the question of guilt'", <u>id</u>., quoting <u>Jones v. United States</u>, 362 U.S. 257, 264, 80 S. Ct. 725, 732 4 L.Ed. 2d 697 (1960) . . . .

In other words, a motion to suppress is contemplated to deal with the issue of excluding "illegally obtained" evidence. In fact, the Ohio Supreme Court has followed this rationale to require a pretrial motion to suppress in order to contest the admissibility of alcohol breath test results relative to foundational requirements. In <u>Ohio v. French</u>, 650 N.E.2d 887, 891-92 (Ohio 1995), the court noted that the testing requirements came from the Department of Health administrative regulations and concluded that a motion to suppress should be used to address evidence that is "illegally obtained" whether by violation of constitutional or statutory provisions. <u>See</u> <u>also</u> <u>State v. Kirn</u>, 767 P.2d 1238, 1239-40 (Haw. 1989) (for interlocutory appeal purposes, the state may appeal the pretrial suppression of breath test results deemed obtained in violation of an administrative rule). However, we do not believe that such reasoning applies under Tennessee law.

7

Although a trial court is not barred from addressing admissibility of test results by a pretrial motion under certain circumstances, we believe that matters of evidentiary foundations, historically rooted in the concerns for the reliability and, therefore, the relevancy of evidence submitted to the jury, are typically assessed at trial and remain the burden of the offering party. In this sense, it is an altogether different procedure that deals with whether a sufficient evidentiary foundation exists to allow expert or scientific evidence to be used. Our rules of evidence contemplate that midtrial determinations of such admissibility issues will occur. See, e.g., Tenn. R. Evid. 104.

Scientific test results and their interpretations presented by an expert witness are admissible only upon a threshold showing of certain existing circumstances. Given the fact that this foundation laying is a prerequisite to admissibility, the burden falls upon the party seeking to introduce scientific test results to prove that the prerequisites are met. See Neil P. Cohen et al., Tennessee Law of Evidence, § 702.4, at 464-66 (3d ed. 1995). Absent the prerequisites being proven to exist, the evidence is inadmissible. Also, that treatise states that if a contest of the qualifications is desired, it is preferable for the opponent to request a jury-out hearing to allow counsel to probe "the witness's expertise by asking about the witness's background and about the scientific basis for the tests and the instruments used in the tests." Id. at 465; see also Tenn. R. Evid. 104(c) (dealing with jury-out hearings for preliminary matters relating to admissibility). We believe that the record in the present case reflects that the defendant sought nothing more than to invoke this procedure.[2]

In specific terms of the admissibility of breath test results in order to prove the alcohol content in the blood, Tennessee previously required the party seeking to admit the results to show that (1) the test instrument used was capable of measuring or

---

[2]We note that the issue of the admissibility of the breath test results in Sensing arose by the defendant's midtrial objection and was resolved through a jury-out hearing. See State v. James D. Sensing, No. 01-C-01-9007-CC-00180, Dickson County (Tenn. Crim. App. Apr. 4, 1991), aff'd 843 S.W.2d 412 (Tenn. 1992).

calculating data being used by the interpreting expert and was based upon scientific principles accepted by the scientific community, (2) the instrument was functioning properly and was used properly at the time of the test, (3) the test was conducted by a person qualified to administer it, and (4) the interpretation of the test results must have been by a qualified person, including the person having an understanding of both the scientific principles behind and the operative functions of the test. See Pruitt v. State, 216 Tenn. 686, 393 S.W.2d 747 (1965); Fortune v. State, 197 Tenn. 691, 277 S.W.2d 381 (1955); Tenn. R. Evid. 702; Cohen, supra §§ 401.17--401.20, 401.22, 702.2--702.4. Although in Sensing our supreme court relaxed the evidentiary foundation needed for admission of breath test results obtained from an Intoximeter 3000, it did not alter the burden for establishing that foundation.

As our supreme court stated in State v. Bobo, the Sensing requirements are "prerequisites for threshold admissibility of breath alcohol test results." 909 S.W.2d at 790. As such, the proponent of the evidence, in this case the state, has the burden of laying sufficient foundation to allow the admission of the breath test results. If the foundation is not proven, the evidence may be excluded upon objection. In fact, this court has already so held. See State v. Harold E. Fields, No. 01C01-9412-CC-00438, Williamson County (Tenn. Crim. App. Apr. 12, 1996).

Therefore, the fact that the defendant raised the threshold admissibility issue midtrial did not constitute a waiver of that issue. Nor did the fact that he proceeded by motion at the beginning of Mr. Jones' appearance as a witness -- as opposed to objecting during Mr. Jones' testimony -- change the nature of the inquiry or the state's burden to establish a proper foundation. However, this does not mean that the state failed to meet its burden in this case.

9

**B**

The defendant contends that the fact that he was tested with his dentures renders the test result inadmissible because the dentures were a foreign substance in his mouth. He notes that Mr. Jones testified that if he had known of the dentures, he would have had them removed. Obviously, the requirement that no foreign matter be in the mouth is intended to insure that the breath that the defendant blows into the Intoximeter 3000 is not tainted by some substance that might alter, by alcohol retention or otherwise, the instrument's reading of the defendant's deep lung air sample. However, we believe that the circumstances in the present case did not call for the exclusion of the breath test results.

Initially, we note that some jurisdictions have been unwilling to consider false teeth to be foreign matter that should bar admission of test results. See People v. Witt, 630 N.E.2d 156 (Ill. App. Ct. 1994); State v. Allen, 702 P.2d 1118 (Or. App. 1984); see also City of Sunnyside v. Fernandez, 799 P.2d 753, 755 (Wash. App. 1990) (administrative regulation excludes "dental work" from "foreign substances" relative to breath test procedures). We are inclined to agree relative to the threshold admissibility prerequisites. However, whether we view dentures to be foreign matter is not dispositive in this case.

The defendant was observed for the required time and nothing unusual was seen. He denied having any foreign matter in his mouth. The record reflects that the fact that he wore dentures was not even disclosed to his counsel until the time of trial. Also, the defendant stipulated to Mr. Jones' qualifications and to the Intoximeter being certified to be functioning properly several months before and weeks after his arrest. Finally, as a matter of omission, there is no evidence in the record that tells us what effect, if any, dentures could potentially have on the test result.

10

The subject of a test should not be allowed to withhold a fact relevant to the test procedures as required by <u>Sensing</u> and then seek exclusion of the test results on the ground that the procedures used were incomplete because of the withheld fact. In this case, if the dentures were considered foreign matter, Mr. Jones was entitled to rely upon the defendant's answer that no foreign matter was present. Thus, either way that the dentures are viewed, the state was entitled to introduce the breath test result into evidence.

In this respect, we believe it to be significant that <u>Sensing</u> requires the subject to be <u>observed</u> for twenty minutes and does not otherwise require a physical probe of the mouth or interrogation of the subject about his or her mouth contents. Obviously, given the fact that a defendant may attack the validity of the test results before the jury, it might be advisable, as a practical matter, for the test operator to ask the subject about dentures. We do not, though, believe it to be a prerequisite to admissibility.

## III

Finally, the defendant contends that he was entitled to the jury being instructed that the breath test result could not be considered until the jury determined that the preliminary facts had been proven. We disagree. As we previously noted, the <u>Sensing</u> requirements are prerequisites for the test result to be admitted into evidence. As such, the trial court -- not the jury -- has the duty to determine whether a proper foundation has been proven in order to allow the test result into evidence.

Once the trial court has determined threshold admissibility, the submission of the breath test result into evidence is unconditional. The jury, as the trier of fact, has the right to consider all of the evidence presented and to determine its relative worth. As <u>Sensing</u> indicates, the admission of the test result does not foreclose

11

the defense from calling the result into question before the jury, whether by cross-examination, presentation of witnesses, or jury argument. 843 S.W.2d at 416. However, whether the jury disregards the test result is a decision left to it as the trier of fact. There is no bar to the jury's consideration of the test result once it is admitted into evidence. Thus, the defendant's requested jury instruction was an incorrect statement of the law, and the trial court properly rejected it. See State v. Moore, 751 S.W.2d 464, 466-67 (Tenn. Crim. App. 1988).

In consideration of the foregoing, and the record as a whole, the judgment of conviction is affirmed.

_____
Joseph M. Tipton, Judge

CONCUR:


(See separate concurring & dissenting opinion)
Paul G. Summers, Judge


_____
William M. Barker, Judge