IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| HOSPICE OF SPOKANE, a Washington non-profit corporation, | ) ) ) | No. 31116-3-III |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| WASHINGTON STATE DEPARTMENT OF HEALTH, a Washington governmental agency, SECRETARY MARY SELECKY, Secretary of Washington's Department of Health in her official and individual capacity, FAMILY HOME CARE CORP., a Washington corporation, | ) ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Respondents. | ) ) ) | |

KULIK, J. — The Washington State Department of Health (Department) approved Family Home Care's (FHC) certificate of need application to provide hospice services in Spokane County. Hospice of Spokane (HOS), an existing hospice provider, requested administrative review of the decision, contending that the Department incorrectly interpreted the six-step methodology in WAC 246-310-290(7) used to determine whether an additional hospice provider is needed in a particular planning area. Specifically, HOS

maintained that projected need must be established within one year of the application, instead of the three-year planning horizon used by the Department and set forth in WAC 246-310-290(6). An Administrative Health Law Judge (HLJ) adopted the Department's interpretation and granted the certificate of need. The decision was affirmed by the superior court. HOS appeals. We affirm the HLJ's decision granting the certificate of need.

## FACTS

In October 2006, FHC applied to the Department for a certificate of need to establish a Medicare/Medicaid eligible hospice agency in Spokane County. Two approved providers already existed in Spokane County: Horizon Hospice and HOS. Although FHC was already operating a hospice in Spokane County, it was unable to serve Medicare/Medicaid patients without approval from the Department.

The Department initially denied FHC's application for lack of need. FHC did not show the Spokane planning area required an additional Medicare/Medicaid facility to provide hospice services. In response, FHC requested an adjudicative proceeding to review the Department's denial. HOS requested permission to intervene in the adjudicative proceeding.

After a stay and a series of subsequent decisions, an adjudicative proceeding finally occurred in March 2011. By this time, the Department agreed that FHC met the applicable certificate of need criteria. However, HOS continued to contest that FHC established need. An HLJ then reviewed FHC's application to determine whether the application met the certificate of need criteria.

The HLJ applied the six-step need projection methodology in WAC 246-310-290(7). The methodology used past statistical data to project the need for a service provider into a future "'planning horizon.'" Clerk's Papers (CP) at 71.

At issue was the extent of the planning horizon to be used for WAC 246-310-290(7). HOS contended that WAC 246-310-290(7) contained a one-year planning horizon that corresponded with the date of application. However, the HLJ determined that the three-year planning horizon in WAC 246-310-290(6) was to be harmonized with the methodology in WAC 246-310-290(7) to project need. Thus, the need methodology required a projected showing of an average of 35 hospice patients per day by the third year of operation. The HLJ found that FHC could show a daily average of 35 before the end of its third full year of operation. Ultimately, the HLJ concluded that FHC met the certificate of need criteria and issued an order approving FHC's certificate of need application.

3

HOS appealed the order to superior court. The court agreed with the HLJ's position that WAC 246-310-290(6) and WAC 246-310-290(7) were dependent on one another. The court found that a three-year projection analysis promoted good planning for health care services. The court affirmed the approval of the application.

HOS appeals to this court. HOS challenges the HLJ's interpretation of WAC 246-310-290(7), specifically the HLJ's incorporation of WAC 246-310-290(6) as part of the need projection methodology.

## ANALYSIS

### *The Three-Year Planning Horizon in WAC 246-310-290(6) and The Need Projection Methodology in WAC 246-310-290(7).*

Washington's Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of administrative agency decisions. RCW 34.05.510. Pertinent here, two grounds on which this court shall grant relief from an agency order in an adjudicative proceeding is (1) if the agency has erroneously interpreted or applied the law, or (2) if the order is arbitrary and capricious. RCW 34.05.570(3)(d), (i). The burden of demonstrating invalidity of the agency's action is on the party asserting invalidity. RCW 34.05.570(1)(a). The appellate court "sits in the same position as the superior court, applying the standards of the []APA directly to the

4

record before the agency." *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

When determining if an error of law has occurred as a result of an agency interpretation, the appellate court applies de novo review. *Children's Hosp. & Med. Ctr. v. Dep't of Health*, 95 Wn. App. 858, 864, 975 P.2d 567 (1999). The agency's interpretation is given substantial weight when the interpretation falls within the agency's expertise. *Id.* (quoting *Purse Seine Vessel Owners Ass'n v. Dep't of Fish & Wildlife*, 92 Wn. App. 381, 389, 966 P.2d 928 (1998)). Even so, the reviewing court has the ultimate responsibility of determining whether the regulation is applied consistently with its underlying policy. *Id.* at 864-65 (quoting *Nielsen v. Emp't Sec. Dep't*, 93 Wn. App. 21, 29, 966 P.2d 399 (1998)).

An agency action is arbitrary and capricious when the action is a "'willful and unreasoning action in disregard of facts and circumstances.'" *Id.* at 864 (quoting *Wash. Waste Sys., Inc. v. Clark County*, 115 Wn.2d 74, 81, 794 P.2d 508 (1990)).

Hospice providers wishing to enter into the Washington State health care market must first acquire a certificate of need from the Department of Health before beginning operation. *King County Pub. Hosp. Dist. No. 2 v. Dep't of Health*, 178 Wn.2d 363, 418-19, 309 P.3d 416 (2013) (citing RCW 70.38.105(4)(a), .025(6)). The provider must

submit an application to the Department to begin the certificate of need review process. WAC 246-310-090(1)(a); WAC 246-310-290(3). The applicant must show the proposed project is needed, will foster containment of costs of health care, is financially feasible, and will meet the structure and process of care. *See* WAC 246-310-200(1).

For hospice agencies applying for a certificate of need, the applicant "must demonstrate that they can meet a minimum average daily census (ADC) of thirty-five patients by the third year of operation. An application projecting an ADC of under thirty-five patients may be approved if the applicant: (a) Commits to maintain medicare certification; (b) Commits to serve one or more counties that do not have any medicare certified providers; and (c) Can document overall financial feasibility." WAC 246-310-290(6).

A six-step methodology in WAC 246-310-290(7) is used to project the need for hospice services. The methodology uses past statistical data to project the unmet need for hospice services into the future. WAC 246-310-290(7). The six steps are:

> (a) Step 1. Calculate the following four statewide predicted hospice use rates using [Centers for Medicare and Medicaid Services] and department of health data or other available data sources.
> (i) The predicted percentage of cancer patients sixty-five and over who will use hospice services. This percentage is calculated by dividing the average number of hospice admissions over the last three years for patients the age of sixty-five and over with cancer by the average number of past three years statewide total deaths sixty-five and over from cancer.

(ii) The predicted percentage of cancer patients under sixty-five who will use hospice services. This percentage is calculated by dividing the average number of hospice admissions over the last three years for patients under the age of sixty-five with cancer by the current statewide total of deaths under sixty-five with cancer.

(iii) The predicted percentage of noncancer patients sixty-five and over who will use hospice services. This percentage is calculated by dividing the average number of hospice admissions over the last three years for patients age sixty-five and over with diagnoses other than cancer by the current statewide total of deaths over sixty-five with diagnoses other than cancer.

(iv) The predicted percentage of noncancer patients under sixty-five who will use hospice services. This percentage is calculated by dividing the average number of hospice admissions over the last three years for patients under the age of sixty-five with diagnoses other than cancer by the current statewide total of deaths under sixty-five with diagnoses other than cancer.

(b) Step 2. Calculate the average number of total resident deaths over the last three years for each planning area.

(c) Step 3. Multiply each hospice use rate determined in Step 1 by the planning areas average total resident deaths determined in Step 2.

(d) Step 4. Add the four subtotals derived in Step 3 to project the potential volume of hospice services in each planning area.

(e) Step 5. Inflate the potential volume of hospice service by the one-year estimated population growth (using [Office of Financial Management] data).

(f) Step 6. Subtract the current hospice capacity in each planning area from the above projected volume of hospice services to determine unmet need.

(g) Determine the number of hospice agencies in the proposed planning area which could support the unmet need with an ADC of thirty-five.

WAC 246-310-290(7).

The application is open for public review and comment. WAC 246-310-290(3)(e). If the Department denies the application, the party requesting the certificate of need has the right to an adjudicative proceeding governed by the APA. The proceeding is conducted by a HLJ, who reviews the application and issues a final order regarding approval of the application. *King County Pub. Hosp.*, 178 Wn.2d at 418. At the hearing, any competing health care provider that participated in the public hearing shall be allowed to present testimony regarding the new application. *Id.* at 418-19 (quoting RCW 70.38.115(10)(b)(iii); WAC 246-310-610).

Here, HOS challenges the HLJ's finding that FHC met the need criteria set forth in WAC 246-310-290(7). HOS does not dispute the underlying calculations by the HLJ. Instead, HOS contends the trial court erroneously interpreted WAC 246-310-290(7) by finding that the regulation incorporated the three-year planning horizon set forth in WAC 246-310-290(6). HOS maintains that WAC 246-310-290(7) establishes a one-year planning horizon that is separate and distinct from WAC 246-310-290(6).

First, we conclude that the plain language of WAC 246-310-290(7)(e), Step 5, is ambiguous as to the number of years for which the applicant is to inflate the potential volume of hospice service by the one-year estimated population growth. While the language of this section gives a detailed, complex formula for establishing quantitative

8

need, it does not include a planning horizon to establish the timeframe by which need must be shown. Indeed, this is not the first time that the methodology in WAC 246-310-290(7) has been considered ambiguous. In *Odyssey Healthcare Operating B, LP v. Department of Health*, 145 Wn. App. 131, 141, 185 P.3d 652 (2008), the court agreed with the Department and the intervenors that the Washington Administrative Code methodology is complex and ambiguous when read as a whole. While *Odyssey Healthcare* addressed WAC 246-310-290(7)(b), Step 2 of the methodology, the court noted, "[T]here is ample room for disagreement about various interpretations of the formula used to calculate unmet hospice care 'need' for each county. The WAC 246-310-290(7) methodology in its entirety is a complex formula, not a simple numerical computation." *Odyssey Healthcare*, 145 Wn. App. at 143. The methodology in WAC 246-310-290(7) is ambiguous, specifically in reference to the planning horizon. This ambiguity requires us to give great deference to the Department's interpretation of its own regulation. *Odyssey Healthcare*, 145 Wn. App. at 145 n.6.

Harmonizing the provisions of WAC 246-310-290, we also conclude that the three-year planning horizon established in WAC 246-310-290(6) applies to the need projection methodology in WAC 246-310-290(7). The rules of statutory construction apply equally to administrative regulations; a rational, sensible construction must be given

9

to the regulation. *Children's Hosp.*, 95 Wn. App. at 864 (quoting *State v. McGinty*, 80 Wn. App. 157, 160, 906 P.2d 1006 (1995)). "In construing statutes, the goal is to carry out the intent of the Legislature." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 6, 721 P.2d 1 (1986). The duty of the court is to give purpose and effect to the statute. *Id.* The court should avoid interpretations that render an unreasonable and illogical consequence. *Id.* "Thus, in attempting to effect the intent of the Legislature, an act must be construed as a whole, harmonizing all provisions to ensure proper construction." *Id.*

In reading the provisions as a whole, the HLJ concluded that WAC 246-310-290(7) provides the method used to project need, while WAC 246-310-290(6) provides the required planning horizon of three years. Thus, the methodology requires a showing of an ADC of 35 hospice patients by the third full year of operation.

The HLJ's conclusions are supported by the statutory construction of WAC 246-310-290. To ascertain the meaning of WAC 246-310-290(7), "'a term in a regulation should not be read in isolation but rather within the context of the regulatory and statutory scheme as a whole.'" *Odyssey Healthcare*, 145 Wn. App. at 142 (quoting *City of Seattle v. Allison*, 148 Wn.2d 75, 81-82, 59 P.3d 85 (2002)). WAC 246-310-290(6) enacts a substantive requirement for certificate of need applicants by stating that hospice agencies

must demonstrate that they can meet an ADC of 35 patients by the end of the third year of operation. WAC 246-310-290(7) then gives steps to calculate the need projection, with the end result being a determination of whether an ADC of 35 is met. A reasonable reading of WAC 246-310-290 incorporates the three-year planning horizon for reaching the Department's ADC goal into the steps to use to actually calculate need based on this same ADC goal. As such, to determine whether the need projection has been met in WAC 246-310-290(7), a certificate of need application must demonstrate an unmet need of an ADC of 35 patients by the third full year of operations. The methodology in WAC 246-310-290(7) incorporates the three-year planning horizon in WAC 246-310-290(6).

HOS offers contrary interpretations of WAC 246-310-290(6) and WAC 246-310-290(7). First, HOS contends that incorporating the three-year planning horizon in WAC 246-310-290(6) is erroneous because WAC 246-310-290(7)(e), Step 5, contains its own one-year planning horizon. HOS's interpretation was rejected by the HLJ and is a misguided reading of the regulation. WAC 246-310-290(7)(e), Step 5, requires the inflation of potential volume of hospice services by the "one-year estimated population growth." In other words, completing this step requires the Department to determine the "one-year population growth" and use that number to increase the potential volume of

hospice services. It does not instruct the Department to inflate the volume only one year into the future. There is no planning horizon in WAC 246-310-290(7)(e).

The harmonization of WAC 246-310-290 avoids superfluous language. We interpret statutes to give effect to all language in the statute and to render no portion meaningless or superfluous. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999)). To read WAC 246-310-290(7) as having its own planning horizon would render WAC 246-310-290(6) meaningless. If a need of 35 ADC must be shown within the first year after the application date for approval, as suggested by HOS, then there would be no reason to also require an applicant to also demonstrate a 35 ADC in the third year of operation.

HOS contends that WAC 246-310-290(6) would not be rendered superfluous because it provides a separate performance standard that an applicant must meet to demonstrate need. This standard is distinct from the methodology in WAC 246-310-290(7) and requires the applicant to demonstrate a business plan confirming that the applicant will be able to meet hospice service needs of 35 patients per day by the third year of its operation.

Despite HOS's contention, WAC 246-310-290(6) does not contain language that would support an operational or performance standard. Also, the interpretation of an

12

additional requirement is not supported when looking at other provisions of WAC 246-310-290. Specifically, WAC 246-310-290(8) identifies the additional standards that an applicant must meet for approval. "In addition to demonstrating need under subsection (7) of this section, hospice agencies must meet the other certificate of need requirements including WAC 246-310-210—Determination of need, WAC 246-310-220—Determination of financial feasibility, WAC 246-310-230—Criteria for structure and process of care, and WAC 246-310-240—Determination of cost containment." WAC 246-310-290(8). While WAC 246-310-290(8) expressly identifies the requirement to demonstrate need under WAC 246-310-290(7), it does not identify a performance standard under WAC 246-310-290(6). A complete reading of WAC 246-310-290 does not support the interpretation that WAC 246-310-290(6) imposes a separate and distinct requirement from WAC 246-310-290(7), but rather incorporates the planning horizon from WAC 246-310-290(6) into WAC 246-310-290(7).

The HLJ's interpretation incorporating a three-year planning horizon best effectuates the statutory purpose of the certificate of need process. If alternative interpretations of a regulation are possible, the interpretation that best advances the overall legislative purpose should be adopted. *Anderson v. Morris*, 87 Wn.2d 706, 716, 558 P.2d 155 (1976).

13

The purpose of the certificate of need process is to promote public health by providing accessible health services and facilities, while controlling costs. RCW 70.38.015(1). The three-year planning horizon provides greater access to health care by permitting additional providers to assist patients if need is found. The three-year planning horizon recognizes the value in planning for future health care needs. At the same time, the three-year planning horizon is not contrary to the purpose of the certificate of need process. The limited time frame still controls the number of providers entering the market and therefore controls the cost.

To the contrary, limiting a planning horizon to one year significantly increases the possibility of a lapse in available providers. Considering the time it takes from submission to approval of a certificate of need—over six months minimally under WAC 246-310-290(3)—there would be no time to prepare for unmet need. By the time the certificate of need is approved, the projected need is more likely to become an unmet present need. A one-year interpretation would frustrate the purpose of the certificate of need process.

Other certificate of need programs under chapter 246-310 WAC also incorporate a three-year planning horizon, with some programs implementing a five-year planning horizon. *See* WAC 246-310-270(9)(b)(i) (three-year planning horizon for ambulatory

14

surgery centers); WAC 246-310-284(6) (three-year planning horizon for kidney dialysis facilities); WAC 246-310-261(5)(c) (four years for open heart surgery), WAC 246-310-263(9)(c) (four years for pediatric open heart surgery); and WAC 246-310-745(3), (4) (five years for percutaneous coronary intervention). When taking these planning horizons for other health care services, the three-year planning horizon for hospice services is not unreasonable.

HOS contends that the legislative history of WAC 246-310-290 suggests a one-year planning horizon. HOS cites to advisory committee reports that expressly rejected a three-year planning horizon in favor of a one-year planning horizon. For ambiguous statutes, we resort to the aids of construction, including legislative history. *City of Olympia v. Drebick*, 156 Wn.2d 289, 295, 126 P.3d 802 (2006) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002)).

The committee draft reports are not helpful to determine the planning horizon in this situation. The reports relied on by HOS were drafts. The record for enactment of WAC 246-310-290 does not contain any final comments on the planning horizon. While the legislative history provides insight into the early considerations of WAC 246-310-290, it provides little guidance on the correct interpretation of the regulation.

15

In sum, we defer to the Department's interpretation of its regulations. The Department reasonably interpreted the need projection methodology in WAC 246-310-290(7) when it determined that the methodology incorporated the three-year planning horizon in WAC 246-310-290(6). Thus, to meet the need projection methodology in WAC 246-310-290(7), FHC's certificate of need application required a projected showing of an ADC of 35 hospice patients by the third full year of operation. The undisputed calculations by the HLJ establish that FHC met this requirement. Thus, the HLJ did not err by granting FHC's certificate of need application to establish hospice services in Spokane County.

We affirm the HLJ's decision.

_____
Kulik, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Fearing, J.

16