[No. 61197-1.   En Banc.   January 26, 1995.]

ST. JOSEPH HOSPITAL AND HEALTH CARE CENTER, *Respondent*, v. THE DEPARTMENT OF HEALTH, ET AL, *Appellants*.

*Christine O. Gregoire, Attorney General, and William L. Williams, Senior Assistant; Foster Pepper & Shefelman and Paul L. Ahern, Jr., for appellants.*

*Vandeberg & Johnson, by Elvin J. Vandeberg and Mark R. Patterson, for respondent.*

JOHNSON, J. — This case requires us to analyze the administrative procedure act, RCW 34.05, along with the certificate of need statute, RCW 70.38, to determine the scope of statutory standing. Specifically, we must decide whether a competing health care provider has standing to seek review of a Department of Health (Department) decision granting a certificate of need, and if so, whether the Department followed proper procedures in granting the certificate.

The trial court found St. Joseph Hospital and Health Care Center had standing to challenge an order of the Department granting a certificate of need to Medical Ambulatory Care, Inc., for the establishment of an outpatient kidney dialysis center. Additionally, the trial court found the Department had not given St. Joseph's proper notice and had improperly determined the need for dialysis services.

The trial court vacated the Department's order granting the certificate of need and remanded to the Department for further proceedings. The Department and Medical Ambulatory Care, Inc., appealed directly to this court. We affirm the trial court's remand on different grounds.

## FACTS

In 1979, the Legislature enacted RCW 70.38, the State Health Planning and Resources Development Act, creating the certificate of need (CN) program. Laws of 1979, 1st Ex. Sess., ch. 161. The Legislature acted in response to the National Health Planning and Resources Development Act of 1974, Pub. L. No. 93-641, 88 Stat. 2225 (repealed 1986).

One purpose of the federal law was to control health care costs. Congress was concerned "that marketplace forces in this industry failed to produce efficient investment in facili-

ties and to minimize the costs of health care". *National Gerimedical Hosp. & Gerontology Ctr. v. Blue Cross*, 452 U.S. 378, 386, 69 L. Ed. 2d 89, 101 S. Ct. 2415 (1981). Congress endeavored to control costs by encouraging state and local health planning. It offered grants to state agencies provided the agencies met certain standards and performed certain functions. Among the specified functions was the administration of a CN program.

The CN program seeks to control costs by ensuring better utilization of existing institutional health services and major medical equipment. Those health care providers wishing to establish or expand facilities or acquire certain types of equipment are required to obtain a CN, which is a nonexclusive license.

In Washington, the Department of Health is the granting agency. RCW 70.38.105(1) authorizes the Department to administer the CN program, and RCW 70.38.135(3) gives the Secretary of the Department authority to promulgate rules setting up the process for obtaining a CN. The rules promulgated pursuant to this authority are found in WAC 246-310.

Medical Ambulatory Care, Inc. (Care, Inc.), a wholly owned subsidiary of National Medical Enterprises, Inc., is a for-profit company headquartered in downtown Tacoma. On November 22, 1991, Care, Inc., filed a CN application for a 17-station outpatient kidney dialysis center to be located in the Lakewood area south of Tacoma. At the time of its application for a CN, Care, Inc., operated 35 Medicare certified centers in seven states, providing kidney dialysis services.

The Department acknowledged receipt of the CN application in a letter dated December 30, 1991. The Department indicated its review criteria included former WAC 246-310-210(1)-(3), -220, -230, -240(1), and -280.[1] Most of these sections were general criteria for judging financial feasibility, structure and process of care, and cost containment. Only former WAC 246-310-280 dealt specifically with kidney dialysis.

---

[1] All references are to the 1990 Washington Administrative Code, which was in effect at the time of the application. Some of these sections have since been amended.

The WAC detailed a 7-step methodology for determining the number of dialysis stations necessary for a given health service area.

At the time of Care, Inc.'s application, the Department was considering changes to former WAC 246-310-280 but had taken no formal steps to amend the rule. Because changes were being considered, Care, Inc., sought additional written assurances that WAC 246-310-280 would be used to evaluate their proposal rather than any proposed changes. There is no response to Care, Inc.'s request in the administrative record.

Following Care, Inc.'s application for a CN, the Department notified "affected persons" as defined in WAC 246-310--010(2), including St. Joseph Hospital and Health Care Center (St. Joseph), of their right to request a public hearing on the application. On January 13, 1992, St. Joseph requested a hearing.

The Department conducted a public hearing on February 24, 1992. St. Joseph testified along with many other health care providers from the area on Care, Inc.'s application. On April 7, 1992, the Department denied Care, Inc.'s application. The Department's analysis found there was not a need for additional stations based on *actual* area utilization rates rather than the formula in former WAC 246-310-280.

Care, Inc., filed a timely administrative appeal of the Department's determination. The appeal was resolved by stipulation of the Department and Care, Inc., on September 8, 1992, with the application being remanded for reconsideration. The administrative record contains no record of the basis for the stipulation and remand. Additionally the record does not reflect notice to affected parties of the appeal or its resolution.

On October 13, the Department issued its remand analysis, this time indicating its willingness to issue a CN subject to certain conditions. One condition required Care, Inc., to obtain an agreement with St. Joseph for patient referral and treatment coordination. The remand analysis contained the following conclusion:

The initial denial of this application was partially based on reasoning that the maximum number of stations, projected by

the formula, was higher than the number of stations needed if calculated on the basis of utilization rates for existing stations. . . . MAC [Care, Inc.] argues that WAC 246-310-280 requires that need be estimated on the basis of a utilization rate of 80% of two patient shifts, which is equivalent to 499.2 dialyses per station per year. This interpretation of current rules results in a 1995 net need in Pierce County for 33 additional stations. This interpretation is consistent with past department decisions.

Admin. R., pt. 9, at 2 (Remand Analysis of the Proposal Submitted by Medical Ambulatory Care To Establish a Kidney Treatment Center in Lakewood).

On November 12, 1992, St. Joseph filed a request for reconsideration of the October 13 decision. The Department issued the conditional CN to Care, Inc., on November 30, 1992. On December 30, 1992, the Department denied St. Joseph's request as neither "timely nor appropriate", noting St. Joseph's had not sought to intervene in the administrative proceeding.

On the day the Department sent the denial letter, St. Joseph filed a petition for review of administrative action in Pierce County Superior Court. The Department moved to dismiss the petition on the ground St. Joseph lacked standing. On April 2, 1993, the Honorable Waldo F. Stone denied the motion.

In May 1993, Care, Inc., was permitted to intervene as a party by stipulated order. After a hearing on the administrative record on October 29, 1993, Judge Stone concluded the Department's issuance of the CN was,

unconstitutional, outside the statutory authority of the agency, and arbitrary and capricious under the provisions of R.C.W. 34.05.570(4) because the agency action denied Petitioner procedural due process and because the agency action was contrary to law.

Clerk's Papers, at 21. He remanded Care, Inc.'s application to the Department for further proceedings in which St. Joseph would have an opportunity to be heard.

Both the Department and Care, Inc., appealed directly to this court.

ANALYSIS

Standing

The administrative procedure act, RCW 34.05, governs proceedings involving the issuance of a CN. RCW 70.38.115(10). Under RCW 34.05.530, only a person who is "aggrieved or adversely affected" by an agency action has standing to obtain judicial review of the action. To qualify as "aggrieved or adversely affected", a person must satisfy three conditions:

(1) The agency action has prejudiced or is likely to prejudice that person;

(2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

(3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.

RCW 34.05.530.

These statutory conditions are drawn from federal case law. *See Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 25 L. Ed. 2d 184, 90 S. Ct. 827 (1970). The first and third conditions are often referred to as the injury-in-fact requirement. *See* 13 Charles A. Wright et al., *Federal Practice* § 3531.4 (1984). Appellants Care, Inc., and the Department have asked the court to assume for purposes of appeal these conditions are met.

■ Therefore, we look only at the second condition. We have not previously considered the second prong of the statutory standing test, which was enacted in 1988. *See* Laws of 1988, ch. 288, § 506. The Legislature appears to have adopted this "zone of interest" test from the United States Supreme Court's decision in *Association of Data Processing*, 397 U.S. at 153. *See* William R. Andersen, *The 1988 Washington Administrative Procedure Act — An Introduction*, 64 Wash. L. Rev. 781, 824-25 (1989). The zone of interest test addresses the concern that mere injury-in-fact is not necessarily enough to confer standing because so many persons are potentially "aggrieved" by agency action. Andersen, *supra* at 824. The test focuses on whether the Legislature

intended the agency to protect the party's interests when taking the action at issue. Andersen, *supra* at 825.

Federal courts have elaborated on the rationale behind the requirement:

> Legislation and subsequent administrative actions inevitably affect a multitude of groups and individuals in our complex and highly integrated society. This is perhaps especially significant where, as here, legislation alters the structure of the marketplace. A test requiring only injury in fact — the constitutional minimum — would necessarily obstruct and undermine legislative control and guidance over essentially political issues by conferring standing to litigate on a host of parties whose interests Congress failed to protect.

*Branch Bank & Trust Co. v. National Credit Union Admin. Bd.*, 786 F. 2d 621, 624 (4th Cir. 1986), *cert. denied*, 479 U.S. 1063 (1987).

This case requires us to answer the question of whether the Legislature intended to protect the interests of competing health care providers when they enacted the certificate of need statute, RCW 70.38. The parties differ in their interpretations of the legislative purpose of the statute. The Department and Care, Inc., argue the Legislature intended the focus of the CN process to be on the public's interests, not the interests of providers. They point to RCW 70.38.015:

> It is declared to be the public policy of this state:
>
> (1) That health planning to promote, maintain, and assure the health of all citizens in the state, to provide accessible health services, health manpower, health facilities, and other resources while controlling excessive increases in costs, and to recognize prevention as a high priority in health programs, is essential to the health, safety, and welfare of the people of the state. . . . Involvement in health planning from both consumers and providers throughout the state should be encouraged;
>
> (2) That the development of health services and resources, including the construction, modernization, and conversion of health facilities, should be accomplished in a planned, orderly fashion, consistent with identified priorities and without unnecessary duplication or fragmentation;
>
> . . . .
>
> (4) That the development of nonregulatory approaches to health care cost containment should be considered, including the strengthening of price competition; and

(5) That health planning should be concerned with public health and health care financing, access, and quality, recognizing their close interrelationship and emphasizing cost control of health services, including cost-effectiveness and cost-benefit analysis.

Appellants claim neither this language nor any other language within RCW 70.38 even suggests economic or competitive interests of existing providers are to be considered in making certificate of need decisions.

Respondent St. Joseph argues this same language supports its position. It claims the focus on cost control through regulation of competition requires its economic interests be considered. St. Joseph also points to former RCW 70.38.115(2), which establishes criteria for the examination of CN applications:

(2) Criteria for the review of certificate of need applications . . . shall include . . .

. . . .

(b) The need that the population served or to be served by such services has for such services;

(c) The availability of less costly or more effective alternative methods of providing such services;

(d) The financial feasibility and the probable impact of the proposal on the cost of and charges for providing health services in the community to be served . . ..

St. Joseph argues this analysis of need, costs, and financial feasibility necessarily involves assessing a proposed project's impact on existing providers.

■ We find St. Joseph's interpretation of legislative intent more persuasive. While the Legislature clearly wanted to control health care costs to the public, equally clear is its intention to accomplish that control by limiting competition within the health care industry. The United States Congress and our Legislature made the judgment that competition had a tendency to drive health care costs up rather than down and government therefore needed to restrain marketplace forces. The means and end here are inextricably tied. Because the Legislature intended to regulate competition as well as control costs, we hold competing service providers to be within the statutory zone of interest.

The Supreme Court of Kentucky reached the same conclusion in a similar case. *See Humana of Kentucky, Inc. v. NKC Hosps., Inc.*, 751 S.W.2d 369 (Ky. 1988). In *Humana*, a competing provider of pediatric cardiac services was held to have standing to challenge a decision by the certificate of need authority that another provider's expansion did not require a certificate of need. The court ruled the statutory scheme protected existing facilities from competition unless a need for additional services could be demonstrated in an administrative hearing subject to the review process. *Humana*, 751 S.W.2d at 373. The court reasoned competitors' interests were parallel to the public's:

> The hospital is protected so it can maintain a quality, cost effective program. The hospital has the information available to assess the impact of a new program, and if it has no standing to challenge the agency's actions as arbitrary, as a practical matter no one will.

*Humana*, 751 S.W.2d at 373.

We agree with the Kentucky court. While an applicant who is denied a CN has both a motive and a statutory right to seek review of the Department's determination, no comparable motivation or statutory authority to seek review exists when the Department grants a CN. Practically, this review can only be achieved if competitors have standing.

## Right to Notice

St. Joseph's claims the Department made two errors in considering Care, Inc.'s reopened application. St. Joseph's first claims the Department failed to provide required procedures at several steps in the CN process. St. Joseph (1) was not notified of Care, Inc.'s request for adjudicative proceedings following the initial denial of its application; (2) was not notified of the stipulation reopening review of Care, Inc.'s application; and (3) was not afforded a hearing when its request for reconsideration was denied and a CN issued to Care, Inc.

Of these three alleged procedural problems, we find only the second violates the statutory procedures governing the issuance of a CN. RCW 70.38.115(9) requires the Depart-

ment to conduct a public hearing on most certificate of need applications, if requested, and to promulgate rules further specifying timing and notice.[2] Pursuant to this statutory authority, the Department adopted WAC 246-310--170, governing notification. The rule, in relevant part, provides:

> The department shall provide written notification of the beginning of the review of a certificate of need application and notification of the beginning of the review of a proposed withdrawal of a certificate of need to affected persons . . ..

WAC 246-310-170(1).

The Department has interpreted the statute, and therefore the rule, to apply only to the initial review of the CN. We think the Department's view is too narrow.

■ The construction given a statute by the administering agency is entitled to considerable weight. *State Nurses Ass'n v. Board of Med. Examiners,* 93 Wn.2d 117, 121, 605 P.2d 1269 (1980). In this case, however, the Department's interpretation is contrary to our case law with regard to the right of agencies to reopen their decisions.

■ Our courts have recognized a limited right of agencies to reopen their final decisions. *Hall v. Seattle,* 24 Wn. App. 357, 362, 602 P.2d 366 (1979). *Cf. State ex rel. Worsham v. Brown,* 126 Wash. 175, 218 P. 9 (1923); *State ex rel. Hearty v. Mullin,* 198 Wash. 99, 87 P.2d 280 (1939). In *Hall,* the court predicated that right on prompt notice of a new hearing. *Hall,* 24 Wn. App. at 363. The court relied upon a decision by the Minnesota Supreme Court:

> Where through fraud, mistake, or misconception of facts the commissioner enters an order which he promptly recognizes may be in error, there is no good reason why, on discovering the error, he should not, *after due and prompt notice to the interested parties,* correct it.

(Italics ours.) *Hall,* 24 Wn. App. at 362 (quoting *Anchor Cas.*

---

[2]RCW 70.38.115(9) provides:

"The department or its designee, shall conduct a public hearing on a certificate of need application if requested unless the review is expedited or subject to emergency review. The department by rule shall specify the period of time within which a public hearing must be requested and requirements related to public notice of the hearing, procedures, recordkeeping and related matters."

*Co. v. Bongards Co-Operative Creamery Ass'n*, 253 Minn. 101, 106, 91 N.W.2d 122, 73 A.L.R.2d 933 (1958)).

Once an agency has made a final decision, that decision normally can be changed only through the appellate process. To do otherwise would violate the principle of res judicata. *See Lejeune v. Clallam Cy.*, 64 Wn. App. 257, 823 P.2d 1144, *review denied*, 119 Wn.2d 1005 (1992). When the appellate process results in a remand to an agency, the agency must begin again. Whether the remand is the result of a settlement or a Supreme Court decision is immaterial. The agency must provide the same procedural safeguards required in the original action.

■ In this case, the Department of Health was statutorily required to give notice of the original action to all affected persons and to give such persons an opportunity for a public hearing. Its rule, WAC 246-310-170, reflected this requirement. The same statute and rule therefore required the Department to give notice of the stipulation which reopened review of Care, Inc.'s application for a CN. Because the Department did not follow these procedures set out in RCW 70.38.115(9) and in its rule, we affirm the trial court and remand the order granting the CN to the Department for further proceedings in light of our decision.

### Determination of Need

St. Joseph's second claim is the Department's use of former WAC 246-310-280 to determine need resulted in an overstatement of need in contravention of the requirements of RCW 70.38. St. Joseph argues the Department *may not* use the rule because it has become outdated. Although St. Joseph's challenge is somewhat indirect, it can only be evaluated as a challenge to the rule itself because it is arguing the rule cannot lawfully be used.

■ Under the new administrative procedure act, the validity of a rule may be determined in the context of any review proceeding using a single standard of review. RCW 34.05.570(2)(a). *See* 64 Wash. L. Rev. at 833-34. Importantly, the validity of the rulemaking action is judged *"as of the time it*

*was taken". Neah Bay Chamber of Commerce v. Department of Fisheries,* 119 Wn.2d 464, 474, 832 P.2d 1310 (1992).

The timing issue precludes applying this standard to the facts here. St. Joseph did not challenge the rule as of the time of adoption, and the rulemaking file is not part of the record before us. We therefore decline to decide on the validity of the rule.

DURHAM, C.J., UTTER, DOLLIVER, SMITH, GUY, and MADSEN, JJ., and ANDERSEN and BRACHTENBACH, JJ. Pro Tem., concur.