[No. 60554-2-I.   Division One.   October 13, 2008.]

OVERLAKE HOSPITAL ASSOCIATION ET AL., *Appellants*, v. THE DEPARTMENT OF HEALTH, *Respondent*.

2

*Donald W. Black* and *E. Ross Farr* (of *Ogden Murphy Wallace, PLLC*) and *James S. Fitzgerald* and *Gregory A. McBroom* (of *Livengood Fitzgerald & Alskog, PLLC*), for appellants.

*Robert M. McKenna, Attorney General,* and *Richard A. McCartan, Assistant,* and *Brian W. Grimm* and *Peter S. Ehrlichman* (of *Dorsey & Whitney, LLP*), for respondent.

¶1 GROSSE, J. — Although a high level of deference is accorded to an agency's determination under the Administrative Procedure Act,[1] such deference will not lie where an agency's decision is based on an implausible interpretation of its regulations. Here, the Department of Health promulgated rules for determining whether a need exists for additional ambulatory surgical facilities in Bellevue that employ a flawed mathematical formula to establish the number of current and projected surgeries. That flawed formula included exempt surgical procedures in calculating demand, but excluded the facilities where exempt surgical procedures are performed from the calculation of existing capacity. Hence, in an area where there is much private, exempt care, as in Bellevue, the calculation will inevitably be biased toward need. Accordingly, we reverse the determination that Swedish Health Services could establish a five-bed ambulatory surgical facility on the eastside.

## FACTS

¶2 The Washington Legislature enacted the State Health Planning and Resources Development Act (Act) in 1979, creating the certificate of need (CN) program to oversee health care development.[2] The CN program is an office within the Department of Health (Department) designed to effectuate the goals and principles of the Act. In

---

[1] RCW 34.05.570.

[2] RCW 70.38.015(2).

order to establish or expand health care facilities, a provider must obtain a CN.[3] For that, a health care provider must establish a need for a particular health care service or facility in that health care planning area. CN applications are evaluated based on specific criteria set forth in the statute and applicable rules.[4]

¶3 To determine whether additional inpatient and outpatient operating rooms are needed in a health planning area, the Department uses the mathematical formula set forth in WAC 246-310-270(9). This formula is a means to compare current operating room capacity in a particular health planning area against anticipated future need, if any. Essentially, the methodology requires three steps:

- Existing Capacity: calculate the capacity of existing operating rooms in the planning area;
- Future Need: project the anticipated number of surgeries in the planning area three years into the future; and
- Net Need: calculate whether the existing operating room capacity is sufficient to accommodate the projected number of future surgeries. If not, then a need exists for more ambulatory surgical facilities in the planning area.

¶4 Here, the Department issued a CN to Swedish Health Services (Swedish) to establish an ambulatory surgical facility with five operating rooms in Bellevue. An "ambulatory surgical facility" is defined as "any free-standing entity, including an ambulatory surgery center that operates primarily for the purpose of performing surgical procedures to treat patients not requiring hospitalization."[5]

¶5 Evergreen Healthcare and Overlake Hospital Medical Center (collectively Overlake) filed an objection to the issuance of the CN to Swedish, alleging that there was no need for additional ambulatory surgical facilities in the

---

[3] RCW 70.38.105; *St. Joseph Hosp. & Health Care Ctr. v. Dep't of Health*, 125 Wn.2d 733, 735, 887 P.2d 891 (1995).

[4] Ch. 70.38 RCW; ch. 246-310 WAC.

[5] WAC 246-310-010(5).

area. The health law judge rejected Overlake's appeal, upholding the methodology employed by the Department in granting Swedish the CN. Overlake appealed to the superior court which upheld the health law judge. Overlake appeals.

## ANALYSIS

¶6 Certain surgical facilities are exempt under the CN scheme. Exempt facilities include those located in the offices of private physicians that are unavailable for outside use.[6] In determining current operating room capacity under the "Existing Capacity" step, the Department does not include exempt facilities where surgeries are currently performed. However, when computing whether additional operating rooms are needed under "Future Need," the Department does include surgeries performed at exempt ambulatory surgical facilities. In short, the formula either undercounts the number of surgeries in the first step or over-counts the number of surgeries to be performed in the second step.

¶7 Overlake objects to the inclusion of surgeries at exempt facilities when the Department excludes those facilities to determine capacity. Both "Existing Capacity" and "Future Need" in the methodology use the terms "operating rooms" and "surgeries." As noted by the health law judge, the plain language of the governing WAC rule does not differentiate surgeries in exempt facilities from surgeries in nonexempt facilities. Nonetheless, the health law judge acquiesced in the Department's interpretation, permitting it to include surgeries performed at exempt facilities when calculating projected surgeries but exclude those very same facilities when calculating the number of operating rooms needed to meet the demand for projected surgeries. Such an application makes no logical sense and is contrary to the basic canons of statutory interpretation.

---

[6] WAC 246-310-010(5).

Indeed, we can envision no scenario where the Department's application of the formula will not result in a showing of need (except where there are no exempt facilities).

■■■ ¶8 Testimony at the administrative hearing indicated that the Department's rationale for this unsound practice lay in the legislature's policy directive to provide "accessible" health care. But, access to health care, though important, was only one reason motivating the legislature in creating the CN program. The legislature's primary purpose was to control costs by limiting competition.[7] The legislature clearly enunciated its goals in its declaration of public policy:

> That strategic health planning efforts must be supported by appropriately tailored regulatory activities that can effectuate the goals and principles of the statewide health resources strategy developed pursuant to chapter 43.370 RCW. The implementation of the strategy can promote, maintain, and assure the health of all citizens in the state, provide accessible health services, health manpower, health facilities, and other resources *while controlling increases in costs*, and recognize prevention as a high priority in health programs.[8]

As the Supreme Court in *Saint Joseph Hospital v. Department of Health* noted:

> While the Legislature clearly wanted to control health care costs to the public, equally clear is its intention to accomplish that control by limiting competition within the health care industry. The United States Congress and our Legislature made the judgment that competition had a tendency to drive health care costs up rather than down and government therefore needed to restrain marketplace forces. The means and end here are inextricably tied.[9]

The formula as interpreted and applied here by the Department is not particularly helpful in achieving any of these

[7] RCW 70.38.015(1).

[8] RCW 70.38.015(1) (emphasis added).

[9] 125 Wn.2d 733, 741, 887 P.2d 891 (1995).

goals as it results in a formula that is fundamentally unsound. Sound reasoning requires the concomitant inclusion or exclusion of exempt facilities. To do otherwise defies logic and the plain meaning of the language used throughout the pertinent WAC.

¶9 On remand, the Department may very well come to the same conclusion it reached. Indeed, there is nothing that would prevent the Department from discounting private surgical procedures and facilities entirely should it so choose. But here, the Department's decision to issue Swedish the CN was arbitrary and capricious because it was based on an erroneous interpretation of the governing statutes and a misapplication of its own regulations. The Department's calculation necessarily resulted in an overcalculation of future need for additional outpatient operating rooms in the East King County Planning Area. Because we find that the Department misapplied its own rule (WAC 246-310-270(9)),[10] we reverse.

BECKER and ELLINGTON, JJ., concur.

Review granted at 166 Wn.2d 1010 (2009).

---

[10] The WAC provides in pertinent part:

(9) Operating room need in a planning area shall be determined using the following method:

(a) Existing capacity.

(i) Assume the annual capacity of one operating room located in a hospital and not dedicated to outpatient surgery is ninety-four thousand two hundred fifty minutes. This is derived from scheduling forty-four hours per week, fifty-one weeks per year (allowing for five weekday holidays), a fifteen percent loss for preparation and clean-up time, and fifteen percent time loss to allow schedule flexibility. The resulting seventy percent productive time is comparable to the previously operating hospital commission's last definition of "billing minutes" which is the time lapse from administration of anesthesia until surgery is completed.

(ii) Assume the annual capacity of one operating room dedicated to ambulatory surgery is sixty-eight thousand eight hundred fifty minutes. The derivation is the same as (a)(i) of this subsection except for twenty-five percent loss for prep/clean-up time and scheduling is for a thirty-seven and one-half hour week. Divide the capacity minutes by the average minutes per outpatient surgery (see (a)(vii) of this subsection). Where survey data are unavailable,

assume fifty minutes per outpatient surgery, resulting in a capacity for one thousand three hundred seventy-seven outpatient surgeries per room per year.

(iii) Calculate the total annual capacity (in number of surgeries) of all dedicated outpatient operating rooms in the area.

(iv) Calculate the total annual capacity (in number of minutes) of the remaining inpatient and outpatient operating rooms in the area, including dedicated specialized rooms except for twenty-four hour dedicated emergency rooms. When dedicated emergency operating rooms are excluded, emergency or minutes should also be excluded when calculating the need in an area. Exclude cystoscopic and other special purpose rooms (e.g., open heart surgery) and delivery rooms.

(b) Future need.

(i) Project number of inpatient and outpatient surgeries performed within the hospital planning area for the third year of operation. This shall be based on the current number of surgeries adjusted for forecasted growth in the population served and may be adjusted for trends in surgeries per capita.

(ii) Subtract the capacity of dedicated outpatient operating rooms from the forecasted number of outpatient surgeries. The difference continues into the calculation of (b)(iv) of this subsection.

(iii) Determine the average time per inpatient and outpatient surgery in the planning area. Where data are unavailable, assume one hundred minutes per inpatient and fifty minutes per outpatient surgery. This excludes preparation and cleanup time and is comparable to "billing minutes."

(iv) Calculate the sum of inpatient and remaining outpatient (from (b)(ii) of this subsection) operating room time needed in the third year of operation.

(c) Net need.

(i) If (b)(iv) of this subsection is less than (a)(iv) of this subsection, divide their difference by ninety-four thousand two hundred fifty minutes to obtain the area's surplus of operating rooms used for both inpatient and outpatient surgery.

(ii) If (b)(iv) of this subsection is greater than (a)(iv) of this subsection, subtract (a)(iv) of this subsection from the inpatient component of (b)(iv) of this subsection and divide by ninety-four thousand two hundred fifty minutes to obtain the area's shortage of inpatient operating rooms. Divide the outpatient component of (b)(iv) of this subsection by sixty-eight thousand eight hundred fifty to obtain the area's shortage of dedicated outpatient operating rooms.

WAC 246-310-270.