# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___SEP 05 2013

*Madsen C.J.*
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Sept 5, 2013

Ronald R. Carpenter
Supreme Court Clerk



## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| KING COUNTY PUBLIC HOSPITAL DISTRICT No. 2, d/b/a EVERGREEN HEALTHCARE, a Washington public hospital district, SWEDISH HEALTH SERVICES, d/b/a SWEDISH VISITING NURSE SERVICES, a Washington non-profit corporation, PROVIDENCE HOSPICE AND HOME CARE OF SNOHOMISH COUNTY, a Washington non-profit corporation, and HOSPICE OF SEATTLE, a Washington non-profit corporation,<br><br>        Petitioners,<br><br>    v.<br><br>WASHINGTON STATE DEPARTMENT OF HEALTH, a Washington governmental agency, SECRETARY MARY SELECKY, Secretary of Washington's Department of Health in her official and individual capacity, ODYSSEY HEALTHCARE OPERATING B, LP, a Delaware corporation, and ODYSSEY HEALTHCARE, INC., a Delaware corporation,<br><br>        Respondents. | No. 87574-0<br><br>En Banc<br><br><br>Filed   SEP 05 2013 |

GONZÁLEZ, J.—Rival hospice organizations challenge the Washington State Department of Health's decision (approved by a health law judge) to grant a certificate of need to Odyssey in connection with settling a federal lawsuit. The King County Superior Court revoked the certificate and remanded. The Court of Appeals reversed and reinstated Odyssey's certificate of need. We affirm that decision.

## I.  BACKGROUND

Since 1979, Washington has controlled the number of healthcare providers entering the market. Ch. 70.38 RCW; *Univ. of Wash. Med. Ctr. v. Dep't of Health*, 164 Wn.2d 95, 99, 187 P.3d 243 (2008) (*UWMC*). Providers may open certain healthcare facilities only after receiving a certificate of need from the Department of Health. RCW 70.38.105. The legislature intended the certificate of need requirement to provide accessible health services and assure the health of all citizens in the state while controlling costs. RCW 70.38.015(1), (2). When reviewing a certificate of need application, the department must provide notice to interested parties (such as providers that offer similar services), take public comment, and if requested, hold a public hearing. WAC 246-310-160, -170, -180; RCW 70.38.115(9). If the department denies a certificate of need application, the applicant has the right to an adjudicative proceeding governed by the Administrative Procedure Act, chapter 34.05 RCW. RCW 70.38.115(10)(a). A health law judge (HLJ) presides over this adjudicative proceeding and issues a final order resolving whether the certificate of need application should be approved. *See* WAC 246-10-102 (definition of "presiding

officer"). Any competing health care facility that participated in a public hearing "shall be provided an opportunity to present oral or written testimony and argument" in such an adjudicative proceeding. RCW 70.38.115(10)(b)(iii); WAC 246-310-610. If the department desires to settle with the applicant before the end of an adjudicative proceeding, the department must notify the competitors and "afford them an opportunity to comment, in advance, on the proposed settlement." RCW 70.38.115(10)(c).

Hospice care agencies, such as Odyssey Healthcare Operating B, LP and Odyssey Healthcare Inc. (Odyssey), are required to obtain a certificate of need. RCW 70.38.105(4)(a), .025(6). When determining whether to grant a certificate, the department considers four criteria: need for the proposed project, financial feasibility of the project, structure and process of care, and containment of the costs of health care. WAC 246-310-200(1). These criteria are defined in WAC 246-310-210, -220, -230, and -240, respectively.

The department also adopted particular standards and need forecasting methods for hospice agencies. WAC 246-310-290. To determine whether need exists for additional hospice care providers, the department considers the statewide hospice care use rate, the number of resident deaths in the applicant's planning area, the projected population growth, and the current hospice capacity. WAC 246-310-290(7). If existing providers in a planning area will offer services at a rate that is 35 patients below the state average daily census—the average number of hospice patients per

3

day—under this methodology there is need for one additional hospice provider in that area. WAC 246-310-290(1)(a), (7)(g). A hospice agency applying for a certificate of need must demonstrate that it can meet a minimum average daily census of 35 patients by its third year of operation. WAC 246-310-290(6).

According to the department, it assumed need findings would be available before the October deadline to apply for a certificate of need. Clerk's Papers (CP) at 338; WAC 246-310-290(2). However, need information for the year is not generally available by October, so applicants must prepare an application and pay a large fee without knowing whether there is actually need for a hospice agency. CP at 338; *see* WAC 246-310-990. After a potential hospice provider applies for a certificate of need in a planning area, the department conducts a statewide need analysis based in part on surveys it sends to existing providers. *See* CP at 53, 338. The results of this analysis are apparently made available to existing providers.

This case primarily concerns the need criterion to start a hospice care agency. The department denied Odyssey's 2003 applications to provide hospice care in King, Pierce, and Snohomish counties, finding there was no need for additional providers. CP at 74; *Odyssey Healthcare Operating B, LP v. Dep't of Health*, 145 Wn. App. 131, 135, 185 P.3d 652 (2008) (*Odyssey* I). Odyssey challenged the department's denial of its 2003 applications, arguing in part that the department had misapplied the need methodology. *Odyssey* I, 145 Wn. App. at 137-38. The Court of Appeals disagreed

with Odyssey and did not modify the department's decision to deny the 2003 applications. *Id.* at 146.

In 2006 Odyssey again applied for certificates of need in King, Pierce, and Snohomish counties. Administrative Record (AR) at 13-14, 53-54, 92-93. Odyssey anticipated its King County hospice facility would become operational by July 1, 2008. AR at 25. To analyze need for a new hospice care provider, the department surveyed existing providers about services they had provided in 2003 through 2005. AR at 17. Using this and other data, the department concluded Odyssey had not established need for another hospice provider or met any of the other three criteria. AR at 11, 15.

Odyssey started an adjudicative proceeding to contest the department's decision before an HLJ. AR at 1. The HLJ allowed King County Public Hospital District No. 2, d/b/a Evergreen Healthcare (Evergreen) to intervene. AR at 151-54. The adjudicative proceeding was continued pending the outcome of *Odyssey* I and resolution of a petition Odyssey filed to amend the rules. AR at 175-86, 189.

In 2008, while Odyssey's adjudicative proceeding was pending, other entities applied for certificates of need to provide hospice care in a different county, triggering a new statewide hospice care need calculation. CP at 78, 146-54. This 2008 need analysis, which included data from existing providers based on services offered in 2005 through 2007, showed need for one additional King County hospice provider by

2009 and two by 2013. CP at 147, 154.[1] In February 2009 Odyssey asked the department to grant it a certificate of need in light of the recent need finding in King County, but the department refused, observing that "we always look at the facts that existed during review. So, we can't approve your application based on a Methodology run long after the record closed. In such cases, applicants must re-apply." CP at 877.

Odyssey did not reapply, but it did file a federal lawsuit in April 2009 alleging that the certificate of need program violated the Sherman Act, 15 U.S.C. § 1, and the commerce clause of the United States Constitution, actionable under 42 U.S.C. § 1983. CP at 69-90. In its complaint, Odyssey claimed that since adopting the need methodology in 2003, the department had not found need for any new hospice agency in any county for which an application was submitted. CP at 80. The department denied this allegation in its answer but admitted that whenever need had been found in a county other than one for which an application had been submitted, by the time another provider applied for the county with need, the department determined that need no longer existed. CP at 80, 235. This suggests that existing providers expand their capacity to meet any unmet need. The department also reasserted that it could not use the 2008 calculation to evaluate the 2006 application. CP at 84-85, 236.

---

[1] The finding of need in 2009 conflicts both with the department's original evaluation of Odyssey's 2006 application and with the results of an evaluation conducted in response to a 2007 hospice certificate of need application, which found no need in King County through 2012. AR at 38, 1329-42.

The department and Odyssey negotiated to settle both the adjudicative proceeding and the federal lawsuit. Among the settlement terms, Odyssey agreed to dismiss its federal lawsuit and the department agreed to initiate rule making to consider amending WAC 246-310-290 and to enter into a proposed settlement in the adjudicative proceeding before the HLJ. CP at 265-66. The federal court settlement also precludes Odyssey from seeking damages, costs, or attorney fees related to any event occurring before the settlement date, but that condition would not apply if the department decided in bad faith not to present the proposed settlement of the adjudicative proceeding to the HLJ. CP at 266.

Under the proposed settlement in the adjudicative proceeding, the department would consider stipulating to the approval of Odyssey's certificate of need application for King County in light of the recent finding of need in that area, but only after providing interested entities notice and opportunity to comment. CP at 95-96. Although the department does not generally consider evidence collected after the public comment period has ended, it referred to special circumstances that prompted it to consider approving Odyssey's 2006 application. CP at 337-39. The special circumstances are that Odyssey did not know about the need finding until after the 2008 application deadline had passed; Odyssey's 2003 and 2006 applications had been denied in part because of a finding of no need, so it was reasonable for the company not to reapply in 2008 when it did not know whether need would exist; the new calculation showed need for a provider in 2009, which is within the three-year

window included in Odyssey's 2006 application; and no entities applied for a King County certificate of need in 2007, so applying the 2008 calculation to Odyssey's 2006 application would not prejudice any other potential providers. CP at 338-39. Odyssey agreed to withdraw its request for an adjudicative proceeding regarding the Pierce County and Snohomish County applications. CP at 95-96.

In accord with the proposed settlement, the department provided notice to interested entities and gave them the opportunity to comment. *See* CP at 92-93. Evergreen, Providence Hospice and Home Care of Snohomish County, and Hospice of Seattle (collectively Providence), and two other existing hospice care providers opposed the settlement in written comments sent to the department. AR at 1104-29. The department then submitted the proposed settlement to the HLJ for approval. CP at 330-42.

The HLJ allowed Providence and the two other providers to intervene for the limited purpose of commenting on the proposed settlement.[2] AR at 1002, 1009. The existing providers submitted briefs to the HLJ opposing the settlement. AR at 1179-1527, 1700-20. On December 8, 2009, the HLJ approved the settlement, finding (1) there was proper notice and opportunity to comment, as required by RCW 70.38.115(10)(c); (2) "[i]n the exercise of discretion," the December 2008 need calculation could be used in evaluating need for Odyssey's proposed service; and (3)

---

[2] Evergreen intervened earlier in the proceeding. AR at 151-53.

8

the application met all certificate of need criteria. CP at 346-47. The department issued a certificate of need to Odyssey. CP at 347, 972.

Evergreen, Providence, and another provider filed a petition for judicial review of the HLJ's order in King County Superior Court. CP at 1-20. The Superior Court reversed the HLJ's order approving the settlement, revoked Odyssey's certificate of need, and remanded the matter to the HLJ for a determination based on evidence available at the time the record was open. CP at 974. Odyssey appealed, and the Court of Appeals reversed the Superior Court. *King County Pub. Hosp. Dist. No. 2 v. Dep't of Health*, 167 Wn. App. 740, 275 P.3d 1141 (2012). Evergreen and Providence petitioned for review, which this court granted. 175 Wn.2d 1013, 287 P.3d 10 (2012).

## II.  STANDARDS OF REVIEW

The standards of review in certificate of need cases stem from the Administrative Procedure Act (APA). RCW 70.38.115(10)(a); *Providence Hosp. of Everett v. Dep't of Soc. & Health Servs.*, 112 Wn.2d 353, 355, 770 P.2d 1040 (1989) (referring to former RCW 34.04.130 (1977), recodified as RCW 34.05.570). "The agency decision is presumed correct and the challenger bears the burden of proof." *Providence*, 112 Wn.2d at 355 (citing *In re All-State Constr. Co.*, 70 Wn.2d 657, 659, 425 P.2d 16 (1967)). This court sits in the same position as the superior court and applies the APA standards directly to the record before the agency. *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). Under the error of law

9

standard, the court may substitute its interpretation of the law for that of the agency, but it substantially defers to the agency's interpretation, particularly where the agency has special expertise. *Providence*, 112 Wn.2d at 356 (citing *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982)). The court affirms an agency's factual findings unless they are not supported by substantial evidence. RCW 34.05.570(3)(e); *Tapper*, 122 Wn.2d at 402.[3] The court may also grant relief from an agency order that is arbitrary and capricious, meaning that "the decision is the result of willful and unreasoning disregard of the facts and circumstances." *Providence*, 112 Wn.2d at 356 (citing *Barrie v. Kitsap County*, 93 Wn.2d 843, 850, 613 P.2d 1148 (1980)).[4] We review an administrative law judge's evidentiary decisions for abuse of discretion. *See UWMC*, 164 Wn.2d at 104.

### III.     ANALYSIS

Evergreen and Providence first claim the HLJ should not have considered the 2008 need calculation because that finding was not available when Odyssey's certificate of need application was first evaluated and that even if the HLJ could rely on the 2008 calculation, the department's finding of need was arbitrary and

---

[3] In *Providence* we stated that the court applies the clearly erroneous standard of review to factual issues, 112 Wn.2d at 355, but the APA has since been amended to apply the substantial evidence standard, RCW 34.05.570(3)(e).

[4] Evergreen and Providence contend that the court should overlay the APA standard for review with the summary judgment standard, meaning that the court should view the facts in the light most favorable to the nonmoving party and review facts de novo. Joint Suppl. Br. of Pet'rs at 16-17 (quoting *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915-16, 194 P.3d 255 (2008)). Unlike in *Verizon*, however, the administrative law judge did not resolve this case at summary judgment, so we do not overlay the summary judgment standard here. *See Verizon*, 164 Wn.2d at 915-16.

capricious. Next, Evergreen and Providence allege the HLJ's approval of the certificate was arbitrary and capricious because other, non-need, criteria were not met. Finally, Evergreen and Providence claim their due process rights were violated because the HLJ did not hold an adjudicative proceeding before approving the settlement.

*1. The 2008 Need Calculation*

Evergreen and Providence argue that the department's decision to consider Odyssey's 2006 application in light of the 2008 calculation conflicts with certificate of need laws and the department's long standing policy. Joint Suppl. Br. of Pet'rs at 17-29. Indeed, the department does not claim that its original finding of no need for the 2006 calculation was incorrect. Moreover, the department's informal policy generally forbids new evidence to come into the record at the adjudicative proceeding. *See* CP at 877; AR at 1260.

Nevertheless, the HLJ did not abuse his discretion by considering the new finding of need. Administrative law judges, such as HLJs, have considerable discretion to determine the scope of admissible evidence. *UWMC*, 164 Wn.2d at 104 (citing *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 597, 90 P.3d 659 (2004)). In *UWMC*, a medical center opposing another provider's certificate of need contested the HLJ's evidentiary cutoff, which excluded evidence the medical center sought to admit. 164 Wn.2d at 101-02. The department responded that the decision to grant a certificate of need is based on a "'snapshot'" of facts that existed

11

around when the application was filed. 164 Wn.2d at 103. But the department is not necessarily limited to that snapshot. We noted that nothing in the rules or statutes specifically addresses the record before an HLJ, concluding that "[i]t was within the sound discretion of the health law judge to admit, or not admit, evidence that came into existence after the close of the public comment period." 164 Wn.2d at 103-04.[5]

In light of the special circumstances described by the department, the HLJ did not abuse his discretion by considering the 2008 need calculation. Certificate of need applications are due in October, but the 2008 need finding was not available until December, so Odyssey was not able to apply for a certificate in 2008 after need had been found in King County. *See* CP at 154; WAC 246-310-290(3)(b). Odyssey could have reapplied in 2009, but as the department admitted in federal court, each time need has been found in a county for which no providers had applied that year, that need was eliminated by the time a provider applied for a certificate in that planning area. CP at 80, 235.

Odyssey also could have applied for a certificate of need in 2008, without knowing whether there would be need for a new hospice provider in King County, but that would have required it to wager a substantial expense for a benefit that was far

---

[5] Department Secretary Mary C. Selecky drafted a memo while *UWMC* was pending, affirming "the department's long practice of not allowing new evidence to come into the record at the adjudicative proceeding." AR at 1260. Although Evergreen and Providence rely on this memo to support their claim that the HLJ in this case violated department policy, Secretary Selecky expressly limited the statement in the memo to the time while *UWMC* was pending. *Id.* We found that an HLJ has considerable discretion over the admission of evidence, so Secretary Selecky's memo is of little authority.

from guaranteed. In 2008 the certificate of need application fee for a hospice agency was over $18,000. Former WAC 246-310-990 (2008). That fee does not include the cost of preparing an application or defending it through the approval process. Considering that the department had already denied Odyssey's applications twice for lack of need and that Odyssey was challenging the certificate of need rules in federal court, it is reasonable that the company would choose to avoid the extensive and perhaps fruitless expense of applying again in 2008.

We also find it significant that no certificate of need applicants were prejudiced by the department's decision to rely on the later need finding. If another entity had applied for a certificate of need to offer hospice care in King County in 2007, our analysis might have been different.

Evergreen and Providence imply that the department must conduct need analysis consistently with how it interpreted the methodology in *Odyssey* I. Joint Suppl. Br. of Pet'rs at 18-19. In *Odyssey* I, the department evaluated Odyssey's 2003 applications apparently in light of hospice use data from the prior three years, *see* 145 Wn. App. at 139, so Evergreen and Providence argue that the department should consider Odyssey's 2006 applications using data from only 2003 through 2005. But the *Odyssey* I court did not bind the department to considering data from any specific time. The court merely held that the department did not act in an arbitrary and capricious manner by using survey data collected after Odyssey had filed its

13

applications and relying on historical hospice use data for counties that did not respond to the survey. *Id.* at 145-46.

Evergreen and Providence refer to *UWMC* for the certificate of need program's objectives of meaningful public input and expeditious decision making, arguing that the settlement in this case deviates from those goals. Joint Suppl. Br. of Pet'rs at 27-28. Although it is unusual for the department to rely on data from a different time span after the public comment period and public hearing have passed, the situation was itself unusual and the department and the HLJ both invited interested parties to submit written comments. Furthermore, allowing the department to rely on its most recent need findings when negotiating with a certificate of need applicant serves the goal of expeditious decision making. The department's desire to settle the federal lawsuit apparently motivated it to consider the more recent need finding, but the HLJ's use of that information was not an abuse of discretion.

Evergreen and Providence also argue that no need exists under the 2008 calculation, when properly applied. *Id.* at 30-32. Specifically, they claim the department failed to include Kline Galland and Providence ElderPlace[6] in its need calculation and that the department improperly extended the planning horizon to make it seem as though the 2008 calculation would support two providers. According to

---

[6] Evergreen and Providence essentially raise a factual dispute regarding whether ElderPlace is a hospice care agency. Before the HLJ, the department argued that ElderPlace is not a licensed hospice, but instead coordinates Providence-based services for the elderly. CP at 336-37. The department also submitted a description of ElderPlace from the Providence web site, which does not seem to describe a hospice provider. AR at 1024-25, 1142-50. The department's finding that ElderPlace is not a hospice provider is supported by substantial evidence.

14

Evergreen and Providence, Kline Galland should have been included in the need analysis because it received an exemption to provide hospice services before the department granted a certificate to Odyssey. *Id.* at 31 (citing AR at 1191-92, 1194). The department did not receive Kline Galland's application until August 18, 2009, however, months after it had completed the 2008 need calculation. AR at 1191. Moreover, the department contends Kline Galland had no patient census even at the time of settlement because it was not yet licensed or operating. The department did not act arbitrarily or capriciously by excluding Kline Galland from its calculation.

We affirm the department's decision not to consider Kline Galland and Providence ElderPlace.[7]

*2. Non-need Criteria*

Evergreen and Providence assert that approval of the certificate of need was arbitrary and capricious because the department did not resolve deficiencies that are unrelated to need. *Id.* at 32-34. In its original evaluation denying Odyssey's certificate of need application, the department found Odyssey's application was not consistent with any of the four certificate of need criteria. AR at 11. The HLJ did not include a reevaluation of the four criteria in his order but instead referred to the department's evaluation and settlement proposal, concluding that Odyssey's hospice application met the requirements of the four applicable regulations. CP at 347. The department contends the HLJ's conclusion regarding the non-need criteria was not

---

[7] We do not consider Evergreen and Providence's claim the department improperly extended the need projection to 2013. There was need for at least one more provider through 2012.

arbitrary or capricious because each of those criteria would have been met, but for the lack of need. Suppl. Br. of Dep't of Health at 20.

In its original review of Odyssey's 2006 certificate of need application, the department found Odyssey had not met two subcriteria of the financial feasibility factor. First, the department concluded Odyssey had not shown the immediate and long-range capital and operating costs of the project could be met. Odyssey anticipated it would operate at a profit by the end of its second full year of business, but the department observed that the average length of patient stay that Odyssey predicted was higher than the state average and higher than the numbers Odyssey provided in its own forecasts in another part of the application—resulting in an inaccurately high average daily census and, in turn, an inflated projected profit. AR at 25. The department was also concerned because some of Odyssey's projected patient data was exactly the same for each of the three counties for which Odyssey submitted an application. AR at 25. The department suspected Odyssey's projections "may not be reflective of what the applicant actually expects to provide but instead is what is needed to project having an average daily census by the 3rd year of operation as required by rule." AR at 25. However, Odyssey's projected average daily census was inaccurate in light of the 2006 finding that there would not be enough patients in need of hospice services to warrant an additional hospice provider. Because the department found in the 2008 need analysis that need would exist for another provider in King County (meaning the average daily census was higher than predicted in 2006), the

department's decision to consider that new need finding also satisfied this sub-criterion of the financial feasibility factor. *See* AR at 26 ("need for an additional Medicare certified hospice agency has not been demonstrated. *As a result*, the department concludes that Odyssey's projected number of patient days is not reliable . . . " (emphasis added)).

Under the second subcriterion of the financial feasibility factor, the department found in its initial review that Odyssey had failed to show the costs of the project would probably not have an unreasonable impact on the costs of health services. AR at 26. Again, the department found this subcriterion had not been met because no need existed: "*Absent sufficient unmet need* to support a new hospice agency, the department concludes that any capital or operating expenditures incurred pursuing this project would be an unnecessary duplication of those made by existing providers and may result in an increase in the costs and charges for health services in the county." AR at 26 (emphasis added). Thus, the department's updated 2008 need analysis resolved the financial feasibility issues, and the HLJ did not act arbitrarily or capriciously by finding this factor had been satisfied.

Next, Evergreen and Providence contend the HLJ acted arbitrarily and capriciously by finding that Odyssey's application met the structure and process of care criterion because the department failed to reassert conditions it proposed in the original evaluation. Joint Suppl. Br. of Pet'rs at 33. At the Court of Appeals, both the department and Odyssey agreed that those conditions still applied, however, so this

argument lacks merit. Reply Br. of Dep't of Health at 8-9; Reply Br. of Appellants Odyssey at 22-23.[8]

Finally, Evergreen and Providence cite the HLJ's failure to address testimony from the public hearing, which was allegedly strongly opposed to Odyssey's application. Evergreen and Providence do not refer to any authority requiring an HLJ to expressly address public hearing testimony, so this argument lacks merit as well.

In sum, although the department had earlier criticized deficiencies in Odyssey's application concerning non-need factors, the 2008 need calculation resolved the issues and the HLJ's finding that those factors were satisfied is not arbitrary or capricious.

*3. Due Process*

Evergreen and Providence contend the HLJ violated their due process rights by refusing to allow them to provide oral or written testimony and argument in a hearing on the merits. Joint Suppl. Br. of Pet'rs at 34-36. Evergreen and Providence argue that RCW 70.38.115(10)(b)(iii) and long standing policy guarantee them this right.

The Court of Appeals did not consider this due process claim because it found the issue was not adequately raised before the court. 167 Wn. App. at 750 n.8. Although the providers discussed the issue in only a footnote, the footnote extends

---

[8] Although Evergreen and Providence do not directly discuss subcriteria within the structure and process of care and cost containment factors that the department found were unmet in 2006, we note that the 2008 need analysis also resolved these issues. Under structure and process of care, the department concluded Odyssey's project had the potential to fragment hospice services because there was no need through 2011. AR at 29-30. For the same reason, the department found Odyssey had not satisfied the cost containment subcriterion of showing superior alternatives were not available. AR at 30. The 2008 need finding resolved the issue behind both of these previously unmet subcriteria.

18

over two pages and thoroughly describes the argument. Br. of Resp'ts at 20 n.8. The due process claim was sufficiently briefed.

However, the providers' due process rights were not violated. The basic requirements of procedural due process are notice and the opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15, 70 S. Ct. 652, 94 L. Ed. 2d 865 (1950). Certificate of need laws provide that any *applicant* denied a certificate of need has the right to an adjudicative proceeding, and similar existing providers within the applicant's service area that participated in a public hearing "shall be provided an opportunity to present oral or written testimony and argument" at the proceeding. RCW 70.38.115(10)(a), (b). And "[i]f the department desires to settle with the applicant prior to the conclusion of the adjudicative proceeding, the department shall so inform the health care facility or health maintenance organization and afford them an opportunity to comment, in advance, on the proposed settlement." RCW 70.38.115(10)(c).[9] Evergreen and Providence argue this authority to settle does not authorize the department to circumvent established evaluation procedures or modify its decision without an adjudicative proceeding. Joint Suppl. Br. of Pet'rs at

---

[9] Evergreen and Providence refer to the final bill report accompanying this provision, which states that an interested party may "present testimony and argument at any adjudicative proceeding of the application on appeal. . . . The interested party must *also* be afforded an opportunity to comment in advance of any proposed settlement." Joint Suppl. Br. of Pet'rs at App. D, Ex. A (emphasis added). Because the bill report indicates that interested parties *also* have the right to comment on any proposed settlement, Evergreen and Providence imply that the HLJ must hold an adjudicative proceeding, even though the parties chose to settle. *See id.* at 22. A more likely reading of this statement is simply that interested parties must be given a chance to participate—whether that means arguing at an adjudicative proceeding or commenting on a proposed settlement.

19

21-22; CP at 973. But it is unclear what purpose settlement would serve if a competing provider could simply request a full adjudicative proceeding whenever the department attempted to negotiate with an applicant.

Moreover, although we have held that competing health care providers have standing to obtain judicial review of a certificate of need the department grants to another provider, it does not follow that a competitor has the right to demand an adjudicative proceeding before an HLJ. In *St. Joseph Hospital & Health Care Center v. Department of Health*, 125 Wn.2d 733, 735, 887 P.2d 891 (1995), we considered a competitor's challenge to the grant of a certificate of need to open a kidney dialysis center. Concluding the competitor was within the zone of interests of the certificate of need statute, we reasoned: "While an applicant who is denied a CN [(certificate of need)] has both a motive and a statutory right to seek review of the Department's determination, no comparable motivation or statutory authority to seek review exists when the Department grants a CN. Practically, this review can only be achieved if competitors have standing." *Id.* at 742.[10] Regarding a competitor's right to participate in certificate of need litigation, we considered the procedures the department must follow. *Id.* The competitor claimed the department erred by failing to provide notice of the applicant's request for adjudicative proceedings following the initial denial of its application, failing to notify the competitor of a stipulation

---

[10] Odyssey argues that interested parties are not allowed full judicial review of certificate of need settlements, Suppl. Br. of Resp't Odyssey at 11 n.4, but this conflicts with the reasoning behind *St. Joseph*. *See* 142 Wn.2d at 742.

reopening review of the application, and not affording the competitor a hearing when its request for reconsideration was denied and a certificate issued to the applicant. *Id.* Significantly, of these three alleged errors, we found only the failure to provide notice of the stipulation reopening review violated the statutory procedures. *Id.* We concluded that the department's failure to afford the challenger a hearing when its request for reconsideration was denied did not violate the statutory procedures governing certificates of need. *Id.*

Evergreen and Providence were allowed to seek judicial review of the grant of a certificate to Odyssey. Although they assert they were also entitled to an adjudicative proceeding, we considered a similar claim in *St. Joseph* and declined to find there was such a statutory right.

## IV.    CONCLUSION

The HLJ did not abuse his discretion under these circumstances by relying on new evidence in approving the previously denied certificate of need. The department's 2008 need analysis was proper, and the providers had sufficient notice and opportunity to participate in the settlement process to satisfy their statutory and due process rights. We affirm the Court of Appeals.

_Gonzáles, J._

WE CONCUR:

_Madsen, C.J_

_J.M. Johnson_

_Owens, J_

_Wiggins, J._

_Fairhurst. J._

_Gerdon McCloud, J._

No. 87574-0

C. JOHNSON, J. (dissenting)—The majority allows the Washington State
Department of Health to essentially reward an applicant with the license to which it
was not legally entitled because the department was sued. Here, until the federal
lawsuit was filed, the department's consistent and correct legal position in this case
was that historical data up to the application deadline determined future need. This
position is compelled by the applicable statutes and regulations. The department
applied and defended this position in reaching its initial decision and throughout
agency adjudications and appeals. That decision was challenged and correctly
upheld in the trial court and the Court of Appeals in *Odyssey* I.[1] Yet, when
confronted with a separate federal lawsuit for monetary damages, the department
changes its position and decides it is not bound by the decision it has steadfastly
defended, even though nothing about the statutes or regulations changed. And this

---

[1] *Odyssey Healthcare Operating B, LP v. Dep't of Health*, 145 Wn. App. 131, 135, 185
P.3d 652 (2008).

about-face is especially egregious here because this change in position denied interested parties their statutory rights and their opportunity for meaningful participation. Such action is the very definition of arbitrary and capricious decision making and is contrary to the law. The trial court correctly recognized the peculiarity of the State's argument, vacated the certificate of need, and remanded with directions to, in essence, follow the law. We should do the same.

The majority applies the wrong standard of review and resolves this case under the discretion generally afforded administrative law judges to determine what evidence to consider. Within this discretion, reasons the majority, the health law judge (HLJ) could consider the "special circumstance" that "2008 need data" was not available until after the application deadline. But this is not remarkable or special and is largely irrelevant to the actual "special circumstance" in this case. The question, properly framed, is whether the settlement of a separate lawsuit, claiming monetary damages, can be a "special circumstance" that allows the agency to abandon the statutory and regulatory requirements, the "facts" of the case, and the agency's consistent legal position throughout.

The "special" circumstance relied on by both the agency and the majority, and the unavailability of the 2008 data by the application deadline, is not actually special at all. Circumstances will often change after the fact and cannot be "special." As the department admits and the majority recognizes, when WAC 246-

2

310-290 was adopted, it provided that need data would be available *before* the application deadline, not at some future date. However, in the department's own words, these "assumptions proved incorrect, meaning that applicants unfortunately had to apply *without* knowing whether need existed." Clerk's Papers at 338. This situation was not unique to Odyssey Healthcare Operating B, LP and Odyssey Healthcare Inc. (Odyssey) and, as such, the department's after-the-fact reliance on the lack of timely 2008 data was an improper departure from specific department rules and regulations. Ch. 70.38 RCW; ch. 246-310 WAC.

But more importantly, even if this were a special circumstance, whether Odyssey was somehow prevented from submitting a 2008 application should have no bearing on whether need existed when the application was filed. The agency had determined years earlier that no need existed, basing that decision on the 2006 data, a proposition that remains undisputed. The HLJ was not considering facts that somehow changed this underlying information. Rather, Odyssey was able, in exchange for settling a lawsuit, to achieve something to which it was not legally entitled. Essentially, any "new" finding of need was not triggered by a change in the original data, but by the threat of federal litigation. The majority now allows Odyssey to use the leverage gained by litigation as a way to bypass the application process and delay the proceedings until a time when favorable data is produced, a

tactic which not only prejudices other interested parties but also completely abandons the statutory and regulatory requirements.

The majority's reliance on *University of Washington Medical Center v. Department of Health*, 164 Wn.2d 95, 187 P.3d 243 (2008) (*UWMC*), is also misplaced. There, we answered the question of whether an HLJ could set an evidentiary cutoff, finding that these decisions fell within the HLJ's discretion. Importantly, however, *UWMC* involved limiting the record, not expanding it indefinitely. Thus, it has little relevance on our case today other than for the undisputed proposition that an HLJ has discretion on evidentiary determinations. Additionally, the excluded evidence in *UWMC* that applied to the time period covered by the initial application. But, as discussed above, the 2008 need data is not additional evidence bearing on the 2006 application. Accordingly, *UWMC* is inapplicable in this case.

The majority's reasoning also skirts the issue as to the meaning of RCW 70.38.115(10)(c), which was the foundation of the Court of Appeals' decision.[2] The provision permits the department to settle with an applicant prior to the conclusion of an adjudicative proceeding, provided that notice and an opportunity to comment are given to other interested parties. None of this applies here. The

---

[2] *King County Pub. Hosp. Dist. No. 2 v. Dep't of Health*, 167 Wn. App. 740, 751-52, 275 P.3d 1141 (2012).

majority reasons that because the petitioners were given notice and an opportunity to comment, the department's settlement stands. But this reasoning creates a loophole in the application procedures and allows circumvention of the legal requirements. Had Odyssey been granted a certificate of need when it first applied, petitioners would likely have been entitled to an adjudication under the Administrative Procedure Act, chapter 34.05 RCW. RCW 70.38.115(10)(b)(iii); *St. Joseph Hosp. & Health Care Ctr. v. Dep't of Health*, 125 Wn.2d 733, 742, 887 P.2d 891 (1995). Now, however, petitioners are denied the opportunity for an adjudication because the approval comes in the form of a "settlement" rather than outright approval of the application.

This result is especially troubling when the legislative history of RCW 70.38.115(10)(c) is considered. The provision was passed roughly seven months after we issued our decision in *St. Joseph Hospital* and appears to have simply codified our holding that the department must notify opponents of any settlement and allow them an opportunity to comment. In addition to the striking similarity between the holding in *St. Joseph Hospital* and RCW 70.38.115(10)(c), the final bill report states that the "interested party must *also* be afforded an opportunity to comment in advance of any proposed settlement." FINAL B. REP. on Engrossed Second Substitute H.B. 1908, at 8, 54th Leg., 1st Spec. Sess. (Wash. 1995) (emphasis added). The use of "also" means that the rights in RCW

70.38.115(10)(c) are additional to an opponent's right to a full adjudication when an application is approved. That statutory requirement was avoided here.

When these issues are considered in tandem with the department's clear disregard for the regulations and policies regarding the use of past data to determine future need, the HLJ's decision is especially egregious. The department has consistently considered and relied upon data from prior years in determining whether a current need exists. This was the practice used by the department for years, affirmed in *Odyssey* I,[3] and advocated by the department in the federal litigation. Odyssey and all interested parties understood and relied on these practices. Then, when confronted with a separate lawsuit, the department acquiesces, creates an irrelevant "special circumstance," and allows circumvention of the legal requirements. The HLJ then summarily, without allowing statutorily required process, rubber stamps the department's decision. Approval of Odyssey's application is completely inconsistent with the department's established and, before now, ardently defended practices required under the law. It was arbitrary and capricious and contrary to the law. We should reverse the Court of Appeals' decision, revoke the certificate of need, and remand to the agency with instructions to follow the law.

---

[3] *Odyssey* I, 145 Wn. App. at 135.

Stephen, J.