**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

MCCLURE & SONS, INC.,          )      No. 80588-6-I
                                 )
             Appellant,        )
                                 )      DIVISION ONE
                  v.               )
                                 )
STATE OF WASHINGTON,       )
DEPARTMENT OF LABOR AND  )
INDUSTRIES,               )
                                 )      UNPUBLISHED OPINION
             Respondent.      )
                                 )

MANN, C.J. — McClure and Sons (MSI) appeal a Board of Industrial Insurance Appeals (Board) final order, contending that there was insufficient evidence to support the five construction worksite violations that they were cited with by the Department of Labor and Industries (Department). MSI also argues that it was unfairly prejudiced by the Board's exclusion of evidence concerning the inspector's conduct. We affirm.

FACTS

MSI is an industrial contractor with offices in Washington and Oregon. MSI was the general contractor for a new riverfront sewer pump and lift station for the City of Everett, adjacent to the Snohomish River. The project consisted of two sites separated

Citations and pin cites are based on the Westlaw online version of the cited material.

by approximately one-half mile: Lift/Pump Station No. 43 (Station 43) and Lift/Pump Station No. 33 (Station 33). Station 43 was in close proximity to two sets of energized power lines—a set of high voltage power lines and a separate, lower-voltage set.

On February 8, 2016, Mark Valgardson, a compliance and safety officer for the Department drove by the site and observed two cranes with the booms extended near power lines. Valgardson spoke with John Orgorolka, MSI's project manager, and Loren West, the project superintendent, who gave Valgardson permission to inspect the site.

MSI built Station 43 by constructing a concrete structure that went 20 to 30 feet into the earth. Axis Cranes, a subcontractor to MSI, used a Liebherr 1225 hydraulic boom crane to drive interlocking tongue-and-groove sheets of steel (piles) into the ground, then poured concreted into the mold created by the piles. When Valgardson arrived, the concrete had set and MSI was removing the piles with a vibra hammer connected to the crane.

During the inspection, Valgardson discovered that the Liebherr crane operating at Station 43 did not have a range limiting device or an alarm to prevent the crane from getting too close to the power lines, a hazard known as encroachment. Valgardson measured the distance from the base of the crane's boom to the area immediately beneath the power line (center pin to drip line) which measured 103 feet, 8 inches. The crane operated the hydraulic boom at two different lengths: 117 feet and 134 feet. Valgardson believed that the crane could have made contact with the power lines. Because the crane's boom tip, load block, and vibra hammer were made of conductive steel, if the crane came too close to the power lines, it would expose the workers to electrocution hazards.

-2-

Valgardson observed that there was no work zone demarcation at the site. MSI disagreed, and their expert witness, Mark Lawless, testified that the iron beams laid out on the ground demarcated the work zone, serving as a template while the workers drove the piles into the ground, and then the piles themselves demarcated the zone as MSI extracted them vertically. Valgardson testified that there were no flags on the sheet pile wall, or any other flags or other high visibility materials to demarcate the work zone anywhere on the jobsite.

Valgardson did not find an elevated warning line at the site as required by code. Valgardson testified that a warning line is "preferably red tape off the ground supported by a cone, a stick, a sandwich board, all indicating vertically the maximum approach to the power lines." West told Valgardson that MSI used orange "snow fence" as a warning line. Valgardson believed that the snow fence was "nowhere near compliant," as it "meandered through the site," and was "wadded up on the ground" at some points. Valgardson assisted the crew with constructing an elevated warning line.

Valgardson observed that there was not a dedicated spotter on site for the crane. A spotter functions to "accurately gauge the crane's proximity, the crane's boom, the crane's load line or the crane's load to the power lines and [to] be able to communicate that immediately to the crane operator and be in a position where he can make that observation."

Larry Lindborg, a certified crane operator, worked as the crane's oiler. Lindborg testified that he would act as the crane's spotter when the crane would sling over the power lines with its boom, creating danger. Lindborg testified that he was the designated spotter on certain days, but not for the whole project. As the oiler, Lindborg

-3-

was responsible for making sure that the crane stayed level and did not tip over. The pile buck, Paul Walters, identified himself as the spotter, but Valgardson opined that he was not in the position to accurately gauge the location of the crane boom or load lines in relationship to the power lines.

At Station 33, Valgardson observed a Favco Hydraulic Boom Crawler crane with an elevated boom. The crane held a load in an excavation and it had a nylon sling wrapped around a pipe in the ground. Valgardson observed that the crane was holding the pipe while the concrete dried and was actively involved in the worksite. Although the crane operator, Jason Kelkenberg, initially said that the Favco crane was certified, when Valgardson returned the next day (February 9, 2016), Kelkenberg explained that he misspoke, and said the crane was not certified in Washington. Kelkenberg had removed the crane from service at this point. Additionally, Kelkenberg explained that the load moment indicator—which gives the crane operator a read of the weight of the load, the boom length and angle, and produces an "overhoist or overload" warning— was nonfunctional.

As part of the inspection, Valgardson reviewed MSI's accident prevention program (APP). While there were 14 crane-specific rules in the plan, none covered crane operations around power lines. Valgardson believed that the plan was deficient because it lacked information on "power line safety, requirements and prohibitions, rigging and signaling, as well as Washington State crane certification inspection and load test language."

The Department cited MSI with violating five regulations under Washington Industrial Safety and Health Act of 1973 (WISHA), ch. 49.17.73 RCW. The Department

-4-

grouped three serious power line safety violations together and issued one penalty. The power line citations were: (1) MSI violated WAC 296-155-53401(5)(i) because it failed to carry out the site supervisor's duties by allowing crane operations near power lines without first meeting the requirements of WAC 296-155-53408; (2) MSI violated WAC 296-155-53408(2)(a)(i)(A) because it did not define a work zone by demarcating boundaries and prohibiting the crane from operating past those boundaries, or define the work zone as the area 360 degrees around the crane up to its maximum working radius; and (3) MSI violated WAC 296-155-53408(2)(b) because it did not take encroachment precautions to prevent electrocution. The Department also cited MSI with one serious violation of WAC 296-155-52901 for operating the Favco crane without certification. Finally, the Department cited MSI with one serious violation of WAC 296-800-14005 for failing to have an adequate APP, specifically related to cranes operating near power lines. The Department fined MSI $3,600 for the power line violations, $3,600 for the certification violation, and $1,800 for the accident prevention plan violation.

MSI appealed the citations. At a hearing before an Industrial Appeals Judge (IAJ), MSI attempted to introduce evidence about Valgardson's conduct during the inspection. The IAJ ruled this evidence irrelevant to whether the alleged violations occurred. The IAJ affirmed all the citations and penalties in a proposed decision and order.

MSI filed a petition for review to the Board. The Board affirmed the citations in a final order. The Board also affirmed the IAJ's rulings excluding evidence of Valgardson's conduct during the inspection. The Board corrected the finding of facts to

clarify the distinction between demarcating the work zone's boundaries and erecting an elevated warning line.

In the final order, the Board found that MSI failed to erect and maintain an elevated warning line and failed to define a work zone by demarcating boundaries and prohibiting the operator from operating beyond those boundaries. It found that there was no designated spotter because although the pile buck identified himself as the spotter, he was not in the position to monitor the crane. Similarly, despite the crane oiler's attempts to serve as the spotter, the Board found that he was not the designated spotter. The Board found that Kelkenberg was operating the uncertified Favco crane. The Board found that the APP was insufficient as it lacked the necessary information regarding cranes operating in close proximity to energized power lines.

MSI petitioned for review to Snohomish County Superior Court. The superior court determined that substantial evidence supported the contested facts and affirmed the Board's final order and decision. The court ordered MSI to pay a civil penalty of $9,000, $200 in attorney fees, and interest from the date of entry of the judgment. MSI appeals.

ANALYSIS

We review the Board's decision in a WISHA appeal based on the record before the agency. Shimmick Constr. Co., Inc. v. Dep't of Labor & Indus., 12 Wn. App. 2d 770, 778, 460 P.3d 192 (2020). The Board's findings of fact are conclusive if supported by substantial evidence. Erection Co. v. Dep't of Labor & Indus., 160 Wn. App. 194, 202, 248 P.3d 1085 (2011). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the stated premise. Mowat Constr. Co. v. Dep't of

Labor & Indus., 148 Wn. App. 920, 925, 201 P.3d 407 (2009). On appeal, we will not re-weigh the evidence, but instead we construe the evidence in the light most favorable to the prevailing party. Shimmick, 12 Wn. App. 2d at 778.

We review questions of law de novo and interpret agency regulations like statutes. Shimmick, 12 Wn. App. 2d at 778. "WISHA statutes and regulations are to be interpreted liberally in order to achieve their purpose of providing safe working conditions for every worker in Washington." Erection Co., 160 Wn. App. at 202. While we may look to federal decisions that interpret WISHA's federal analogue, the Occupational Safety and Health Act of 1970 (OSHA), we will not rely on federal case law when interpreting WISHA if there is controlling Washington case law. Shimmick, 12 Wn. App. 2d at 778.

After a hearing, the IAJ makes an initial decision for the Board, containing the judge's findings of fact and conclusions of law. RCW 51.52.104. The proposed findings and conclusions are binding, unless a party files a petition for review to the full Board. RCW 51.52.104. If a majority of the three-person Board decides to grant the petition, the Board reviews the petition and record and issues a final decision. RCW 51.52.106.

A. Exclusion of Evidence

MSI first argues that the IAJ improperly excluded evidence of Valgardson's behavior during the inspection. We disagree.

We review an administrative law judge's evidentiary decisions for abuse of discretion. King County Pub. Hosp. Dist. No. 2 v. Wash. State Dep't of Health, 178 Wn.2d 363, 372, 309 P.3d 416 (2013). The administrative judge abuses their discretion if the decision is manifestly unreasonable, or exercised on untenable grounds, or for

untenable reasons.  Bayley Constr. v. Wash. State Dep't of Labor & Indus., 10 Wn. App. 2d 768, 795-96, 450 P.3d 647 (2020).

The Department needed to present sufficient evidence that the violations occurred to the Board.  WAC-263-12-115(2)(b); RCW 49.17.140(3).  MSI attempted to introduce evidence of Valgardson's procedural violations related to entry, and e-mail evidence of Valgardson threatening MSI, which the IAJ ruled irrelevant.  MSI has not demonstrated that the IAJ abused its discretion because any evidence of Valgardson's behavior was irrelevant to the Department's burden of proof.  Further, MSI has not demonstrated that the evidentiary rulings affected the outcome of the Board's final order.  Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983) (an error without prejudice does not provide sufficient grounds for reversal).

B.  Power Line Citations

MSI next argues that the Board erred in affirming the crane safety violations because its entire work zone was located beyond 20 feet from the energized power lines and that the crane boom could not have reached the power lines.  We disagree.

The Department grouped three code violations together to form the basis for the penalty concerning the proximity to the power line: (1) MSI violated WAC 296-155-53401(5)(i) by allowing the Axis crane to operate near power lines without first meeting the requirements of WAC 296-155-53408(2); (2) MSI violated WAC 296-155-53408(2)(a)(i)(A) because it did not define a work zone by demarcating boundaries and prohibiting the crane from operating past those boundaries, or define the work zone as the area 360 degrees around the crane up to its maximum working radius; and (3) MSI

violated WAC 296-155-53408(2)(b) because it did not take encroachment precautions to prevent electrocution.

### 1. 20-Foot Separation

MSI first asserts that it could not have violated the power line safety regulations because the crane could not come within 20 feet of the power lines. Under the WISHA regulations, if a crane "could get closer than 20 feet" of the power lines when the crane is "operated up to its maximum working radius in the work zone," then the employer must take special precautions. WAC 296-155-53408(2)(a)(ii).

The operator told Valgardson that he had used a 134-foot boom length to remove a full-length pile. MSI's expert witness agreed that MSI used the 134-foot boom length to pull the piles "all the way out of the ground." The record demonstrates that the 134-foot boom length could actually come into contact with the lower power lines.

MSI contends that the diagram offered by its expert showing that encroachment could not occur and that the diagram offered by the Department was mathematically inaccurate. The IAJ considered both diagrams and MSI's contentions. We will not re-weigh the importance of evidence in our analysis. Shimmick, 12 Wn. App. 2d at 778. Substantial evidence supports the Board's conclusion that the Liebherr crane was within 20 feet of the power lines.

### 2. Demarcation of Work Zone

MSI next argues that the Board erred in finding that it failed to demarcate the work zone. Under WAC 296-155-53408(2)(a)(i), an employer must identify the work zone before beginning crane operations. The employer may demarcate the work zone by: (1) using boundaries such as flags or a range limiting device, and prohibiting the

crane operator from operating past those boundaries or (2) by defining the work zone as the area 360 degrees around the crane's maximum working radius. WAC 296-155-53408(2)(a)(i)(A); WAC 296-155-53408(2)(a)(i)(B).

Substantial evidence supports the Board's findings that MSI failed to demarcate the work zone. Valgardson testified that there were no flags on the sheet pile wall. He also testified that there were no flags or high visibility materials used to demarcate the work zone anywhere on the job site. MSI also did not use a range limiting or range control device because the crane did not have one, and even if it did, the crane operator admitted he did not know how to use it. Despite MSI's contention that it maintained a line with the snow fencing, MSI concedes that the fencing was repeatedly stolen and vandalized. When Valgardson inspected the site, he found that it "meandered through the site," and it was wadded on the ground in places. Further, because the fencing was below the power lines, it was not erected at the appropriate distance from the lines.

When we consider the evidence in the light most favorable to the Department, there is substantial evidence to demonstrate that MSI did not properly demarcate the work zone.

3. Encroachment Precautions

MSI asserts that the Board erred in its findings and conclusion that it failed to take precautions to prevent encroachment on the power lines in violation of WAC 296-155-53408(2)(b).

Under WAC 296-155-53408(2)(b), when a crane can come within 20 feet of power lines, employers "must" take encroachment precautions using one of three options. The first option is to deenergize and ground the power lines. WAC 296-155-

53408(2)(a)(ii)(A).[1] The second option is to ensure that no part of the crane or its load can get closer than 20 feet to the power lines by implementing encroachment precautions. WAC 296-155-53408(2)(a)(ii)(B). The third option is to use a table provided in the regulations that specifies minimum clearance distances for power lines of different voltages and then implement encroachment precautions to ensure no part of the crane or its load come within the minimum clearance distances. WAC 296-155-53408(2)(a)(ii)(C). Option 3 allows a shorter distance when the voltage of the power lines is lower. See WAC 296-155-53408 Table 4. Under both options 2 and 3, the regulations require the employer to "erect and maintain an elevated warning line, barricade, or line of signs, in view of the operator equipped with flags or similar high-visibility markings" and use "a dedicated spotter who is in continuous contact with the crane/derrick operator, plus an elevated warning line, barricade, or line of signs, in view of the spotter, equipped with flags or similar high-visibility markings." WAC 296-155-53408(2)(b)(iii) and (iv).[2]

Substantial evidence supports the Board's finding that there was no warning line at the jobsite. Valgardson testified that there was no elevated warning line. MSI does not point to any evidence that would support the Board finding that a warning line existed. Indeed, MSI concedes its snow fencing was "continually being stolen or vandalized by homeless people." Further, Valgardson testified that the snow fencing "meandered through the site" and was at times below the power lines and in places it

---

[1] MSI does not argue that it used this option.

[2] In lieu of a designated spotter, the encroachment prevention regulations allow use of a proximity alarm, automatic warning device, automatic range limiting devise, or insulating link. WAC 296-155-53408(2)(b)(iv). None of these alternatives were used at the site.

was "wadded up on the ground." Because the snow fencing was on the ground below the power lines, it was not erected at an appropriate distance from the power lines.

Substantial evidence also supports the Board's finding that MSI did not have a designated spotter. To be considered a dedicated spotter, the spotter's sole responsibility must be "to watch the separation between the power line and the equipment, the load line and load (including rigging and lifting accessories), and ensure through communication with the operator that the applicable minimum approach distance is not breached." WAC 296-155-53408(2)(b)(iv)(B)(IV). Although Lindborg testified that he was the spotter, he also served as the crane oiler. The oiler's job duties included watching the levelness of the crane, which is especially important when working with a vibra hammer. Therefore, there was not a single individual whose only job was to act as a spotter.

C. Uncertified Crane Citation

MSI next argues that the Board erred in affirming the citation for the Favco crane because the crane was not used for work on the project, was broken, and was only being operated for diagnosis and repair.

The Department cited MSI with one serious violation of WAC 296-155-52901 for operating the Favco crane without proper certification. "All cranes . . . must be certified." WAC 296-155-52901. MSI fails to provide any authority to demonstrate that the crane must be in "use" to require certification. The Department is not required to demonstrate that the uncertified crane assisted in the construction project to warrant a citation. Even if MSI was only testing the crane on the worksite as they contend, the Department still had the authority to cite MSI for operating a crane on a construction site

-12-

without the proper certification. MSI concedes that the crane was attached to the section of pipe and that the crane lacked certification. Therefore, substantial evidence supports the Board's finding that the Favco crane was uncertified while being used at the project site.

MSI also argues that we should reduce the violation from a serious to general violations because the uncertified crane did not pose a major safety risk to employees. RCW 49.17.180(6) provides that

> a serious violation shall be deemed to exist in a workplace if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

In order to prove a serious violation, the Department must prove the following five elements: (1) the cited standard is applicable; (2) the employer did not meet the cited standard; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition, and (5) that there is a substantial probability that death or serious physical harm could result from the violative condition. Shimmick, 12 Wn. App. 2d at 779.

The Board has the authority to categorize violations. Potelco, Inc. v. Dep't of Labor & Indus., 7 Wn. App. 2d 236, 251, 433 P.3d 513 (2018). Here, the Board found that the crane was uncertified and defective. The Board determined that "the probability of an accident was rated as 2 on a scale of 1 to 3, the severity of an injury due to the hazard created by operation of the defective and uncertified Favco crane was rated as a

-13-

3 on a scale of 1 to 3, yielding a gravity rating of 6." By MSI's own admission, the Favco crane was defective, which presents an elevated safety risk. A hazard is presumed when the safety standard is violated. Shimmick, 12 Wn. App. 2d at 786. Therefore, there was sufficient evidence to support the uncertified crane citation as a serious violation.

D. Inadequate APP Citation

MSI argues finally that the Board erred in affirming the citation for its APP because the program sufficiently satisfied the statutory requirements. We disagree.

WAC 296-800-14005 requires an employer to "develop a formal accident prevention program that is outlined in writing. The program must be tailored to the needs of your particular workplace or operation and to the types of hazards involved." Valgardson testified that at an expanded discovery conference, MSI provided him with the APP, published before the inspection, and subsequent documentation. A Department Division of Occupational Safety and Health (DOSH) Hazard Alert was among these documents. Valgardson testified that this subsequent documentation did not rectify the deficiency as the Department handouts did not contain the level of detail required for a sufficient APP.

The Board considered these additional materials that MSI had attached to the APP after discussing the deficiencies with Valgardson. Despite MSI's contentions about the sufficiency of the DOSH hazard alert, ultimately, the Board considered this evidence, but concluded that on the days of the inspection, MSI's APP was insufficient. We will not re-weigh the value of evidence on appeal, therefore, sufficient evidence supports the violation. Shimmick, 12 Wn. App. 2d at 778.

No. 80588-6-I/15

Affirmed.

_____Mann, C.J._____

WE CONCUR:

_____Coburn, J._____          _____Dwyer, J._____

-15-